**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Clement A. MESSINO, Defendant–
Appellant.**

No. 94–2075.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 2, 1994.

Decided April 13, 1995.

**1244**

Matthew R. Bettenhausen, Asst. U.S. Atty., Luis F. Sanchez, Asst. U.S. Atty. (argued), Crim. Div., Barry Rand Elden, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for U.S.

Douglas P. Roller, Roller & Associates, Naperville, IL (argued), Richard M. Beuke, Chicago, IL, for Clement A. Messino.

Before CUMMINGS, BRIGHT,* and COFFEY, Circuit Judges.

COFFEY, Circuit Judge.

The defendant, Clement A. Messino, a former Chicago, Illinois Police Officer, was indicted for cocaine trafficking in violation of 21 U.S.C. § 841(a), possession of firearms as a known felon[1] in violation of 18 U.S.C. § 922(g)(1), unlawfully possessing and transferring firearms in violation of 18 U.S.C. § 922(o)(1), and escaping from federal custody in violation of 18 U.S.C. § 751(a). He entered pleas of guilty to four cocaine charges, three charges of illegal possession of firearms, and one charge of escape from federal custody. Shortly thereafter he filed a motion to withdraw his guilty pleas, which the district court denied, and proceeded to sentence him to 112 months in prison. Messino appeals the district court's denial of his motion to withdraw his guilty pleas to the eight counts of the superseding indictment, and to enhance his sentence, pursuant to U.S.S.G. § 2K2.1(b), for possessing and selling six firearms knowing that they would be used in another offense. We affirm.

## FACTUAL BACKGROUND

Clement A. Messino pleaded guilty to making four separate cocaine sales totalling approximately 700 grams, at the Auto Abbey, his place of business in Harvey, Illinois, as well as two separate sales of firearms to a government undercover confidential informant (CI) between August, 1991, and January 29, 1992. The CI posed as a criminal engaged in the business of selling both narcotics and guns. He boasted of his association with several well known crime figures, claiming that he was associated with the Imperial Gangsters, a local street gang, and stated that he was willing to commit murder.

All transactions between the defendant and the CI were not only tape recorded, but were also observed by federal agents. During most of the transactions, a Bureau of Alcohol, Tobacco, and Firearms (ATF) agent accompanied the CI and posed as his friend, but Messino never transacted any business in front of the agent because he said that he never did any illegal business in front of people he did not know. At one time, Messino threatened the CI with serious injury should he ever discover that he was wearing a "wire."

On August 13, 1991, the CI and Messino entered into negotiations for the purchase of cocaine. The CI met the defendant at the Auto Abbey, and the two men negotiated for the price for one half kilogram of cocaine to be between $12,500 and $14,500. On August 30, the CI returned to the Auto Abbey wearing a transmitter. During this meeting, Messino sold him approximately 79.4 grams of cocaine for $3,330, and on September 4, Messino sold the CI another 109.3 grams of cocaine for $4,500. On September 10, Messino and the CI entered into another drug deal, culminating in the sale of 448.7 grams of cocaine for $10,500 on September 16. In addition to a tape recording of these negotia-

---

* Honorable Myron H. Bright, Judge of the United States Court of Appeals for the Eighth Circuit, is sitting by designation.

1. On May 28, 1985, a jury found Messino guilty of a RICO conspiracy to steal late model automobiles, disassemble them and sell the parts, in violation of 18 U.S.C. § 1962(d). He began participating in the conspiracy in 1979 and used his business, the Auto Abbey, in Harvey, Illinois, to obtain the automobiles.

tions, Messino's fingerprints were found on the package of cocaine.

On September 13, during the course of these negotiations, the defendant's business, residence, cars and other properties were seized pursuant to a federal civil forfeiture complaint and affidavit.[2] Messino told the CI about the seizure on September 16, at which time the defendant offered the CI three kilograms of cocaine in exchange for killing his ex-girlfriend, who he believed was responsible for turning him in to the authorities and responsible for the forfeitures.

The CI met with Messino again on November 12, 1991, and advised him that he wanted to purchase a fully automated machine gun with a silencer, a sawed-off shotgun and a pistol. The defendant agreed to obtain the weapons and the men arranged for another meeting on November 17. An ATF agent gave the CI $2,500 for the weapons and placed a transmitter on him to record the sale. After the CI purchased the weapons, he turned them over to the authorities, and the ATF agent observed that the serial number had been scratched off the silencer.

On December 6, Messino sold the CI a 9 millimeter Smith & Wesson semi-automatic pistol with a silencer for $2,000. The serial numbers were scratched off the weapon and the silencer. During the recorded transaction, Messino stated that he had access to other weapons. On January 24, 1992, the two men met to negotiate the sale of three more ounces of cocaine and another firearm. The CI made a final trip to the Auto Abbey on January 29, and purchased another three ounces of cocaine. Messino was arrested after he agreed to sell the CI a MAC–10 firearm later that night.[3]

On February 26, 1992, a grand jury returned a nine count indictment charging Messino with distributing narcotics, possession of a firearm as a felon, and unlawfully possessing and transferring firearms and a silencer. During his initial appearance in court on February 28, the defendant entered pleas of not guilty. Subsequently, the defendant and his attorney entered into plea negotiations with the government and during the course of these negotiations, the defendant, who was incarcerated at the Metropolitan Correctional Center (MCC), suffered a heart attack. Shortly thereafter he requested the court grant him permission to travel to Northwestern Memorial Hospital, with family members, for specialized medical treatment. The prosecution agreed to this request and the district court granted a medical furlough between March 30 and April 3, on the condition that the defendant return to the MCC when his treatment was completed. The defendant was also given permission to return to the hospital on various occasions for follow-up treatment.

During one of Messino's follow-up visits to the hospital on July 2, 1992, he violated the conditions of his release by escaping from federal custody. Six weeks later, the government located Messino in Florida and arrested him on August 14. On November 5, 1992, a grand jury returned a superseding indictment adding a tenth count charging Messino with escaping from federal custody.

The plea negotiations were re-opened, and Messino asserts that he asked his attorney about the possibility of an entrapment defense should they go to trial and he inquired about the "stacking" of charges against him, but that his attorney told him that these defenses were not appropriate in this case. On September 27, 1993, the defendant ostensibly appeared before the court to plead guilty to four cocaine counts, three counts of illegal possession of firearms by a felon, and one count of escape from federal custody, but he refused to plead and requested additional time to consult with his family. The court

2. Messino's property was seized because he was an alleged cocaine dealer and the government was of the opinion that he acquired his assets with the proceeds from his drug dealing. *United States v. Michelle's Lounge*, 39 F.3d 684, 687 (7th Cir.1994). Upon a finding of probable cause, the district court issued a warrant for the seizure of the defendant's property. *Id.* at 688. Messino appealed the seizure of his property to the dis-

trict court for the Northern District of Illinois, but both the district court and this court denied his appeal. *Id.*

3. The MAC–10 is a compact and lightweight semi-automatic pistol version of a submachine gun.

agreed and arranged with the MCC to allow Messino to visit with his family.

The defendant alleges that during the next few days, he was under incredible pressure from his family and his attorney to plead guilty to the crimes charged. He says that his counsel urged him to plead guilty and advised him that the government was offering him the best deal he could get and that if he went to trial, he could receive twice the amount of prison time set forth in the plea agreement. Messino further alleges that his attorney spoke to his wife in order to convince her to urge him to plead guilty.

Messino claims that he tried to get an order releasing his seized funds so that he could retain a different attorney, but that his current attorney refused to file a motion to that effect. While the defendant states that he filed a *pro se* motion requesting a continuance in order to consult with substituted counsel, the docket entry fails to reflect that a motion of this nature was ever filed. Messino met with his wife and son to seek advice concerning the question of whether he should or should not plead guilty. At this family conference, his wife urged him to enter the pleas while his son told him that during the week, he and his siblings were asked to sign affidavits pertaining to the knowledge they had of their father's illegal activities, thus, according to Messino, in effect, forcing them to provide evidence against their father. The siblings were also advised that in the

alternative, if they declined, they would be subpoenaed to testify before a grand jury.

On October 1, 1993, Messino pleaded guilty to eight of the ten counts in the superseding indictment, pursuant to a written plea agreement, and the district court conducted a plea hearing pursuant to Rule 11 of the Federal Rules of Criminal Procedure.[4] The judge made findings reflecting that Messino understood the nature of the charges against him, that he entered the pleas voluntarily, and that there was a sufficient factual basis to support the pleas of guilty. The court accepted the defendant's pleas. In spite of all the information explained to and elicited from Messino, he now claims that this proceeding was "formalistic in nature, requiring simply affirmative or negative responses."

On November 3, 1993, the defendant's attorney filed a motion to withdraw as Messino's counsel and attached a copy of Messino's *pro se* motion to withdraw his guilty plea.[5] The court granted the attorney's motion to withdraw on November 10, and on November 12, Douglas R. Roller, substituted counsel, was granted leave to file his appearance as Messino's attorney of record. Mr. Roller filed an amended motion to withdraw the guilty plea asserting that Messino received ineffective assistance of counsel, was coerced by his prior attorney into pleading guilty, and that the government improperly influenced his decision to plead guilty. The district court denied the motion to withdraw the guilty plea without a hearing or argument.

---

**4.** Federal Rule of Criminal Procedure 11 provides, in relevant part:

(c) **Advice to Defendant.** Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:

(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty ... and the maximum possible penalty provided by law, ... the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines ... and

(3) that the defendant has the right to plead not guilty ... the right to be tried by a jury and at that trial the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, and the right against compelled self-incrimination; and

(4) that if a plea of guilty or nolo contendere is accepted by the court there will not be a further trial of any kind, so that by pleading guilty or nolo contendere the defendant waives the right to a trial ...

(d) **Insuring that the Plea is Voluntary.** The court shall not accept a plea of guilty ... without first ... addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty ... results from prior discussions between the ... government and the defendant or the defendant's attorney.

**5.** Messino claims that he asked his attorney to file this motion on October 4, 1993.

Messino was sentenced on April 29, 1994. At the sentencing hearing, Special Agents Ivan Harris of the Federal Bureau of Investigation (FBI) and Daniel Ivancich of ATF testified for the government. These agents provided testimony concerning the contents of the tape recorded conversations between Messino and the CI, as well as foundational information required for the admission of the tapes including an interpretation of some of the code words and phrases referred to in the tapes and portions of their recorded conversations. At this hearing, Agent Harris testified that the CI made an allegedly unauthorized purchase of narcotics from the defendant, which he claimed to have given to his wife. The agents knew about this purchase in late fall of 1991, but continued to use the CI in the investigation of Messino.

Based on the defendant's guilty plea and the testimony underlying the content of the pre-sentence report, the district court sentenced Messino to 112 months in prison, three years supervised release, a fine of $1,000, and a special assessment of $400. The sentence included a four point offense-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(5) [6] and a two point enhancement pursuant to § 2K2.1(b)(1)(B).[7] Messino appeals both the district court's refusal to allow him to withdraw his guilty plea and the sentence imposed.

### ISSUES

On appeal, Messino raises the following issues: (1) whether the district court abused its discretion when it denied his motion to withdraw his plea of guilty; and (2) whether the district court committed error when it enhanced his sentence.

### DISCUSSION

■■■ In our review of a denial of a motion to withdraw a guilty plea, we rely on Federal Rule of Criminal Procedure 32(d) which states that a court may permit withdrawal of a guilty plea before sentencing "upon a showing by the defendant of any fair and just reason." "The decision of whether to permit a plea withdrawal rests within the sound discretion of the district court, and we will reverse that decision only upon a showing of an abuse of that discretion." *United States v. Knorr,* 942 F.2d 1217, 1219 (7th Cir.1991). The district court's findings regarding whether the defendant has "fair and just" reasons for withdrawal will be upheld unless they are clearly erroneous. *United States v. LeDonne,* 21 F.3d 1418, 1423 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 584, 130 L.Ed.2d 498 (1994).

■■■ Our review of the application of the sentencing guidelines is *de novo,* but where the trial court based its application on findings of fact, review is for clear error. *United States v. Ramacci,* 15 F.3d 75, 77 (7th Cir. 1994). A factual determination is clearly erroneous "only if, after considering all the evidence, the reviewing court is 'left with the definite and firm conviction that a mistake has been committed.'" *United States v. Anaya,* 32 F.3d 308 (7th Cir.1994) (quoting *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)). The trial court is permitted to consider hearsay testimony at sentencing, but the defendant must be given an opportunity to rebut any testimony he considers to be unreliable. *United States v. Campbell,* 985 F.2d 341, 348 (7th Cir.1993) (citation omitted). "We give great deference to the district court's determination that the hearsay is worthy of credence, and will review that ruling only for an abuse of discretion." *Id.* (citation omitted).

#### A.

Initially, Messino argues that the trial court abused its discretion when it denied his motion to withdraw his guilty plea without holding a hearing on his reasons for withdrawal. Messino contends that he presented

---

6. U.S.S.G. § 2K2.1(b)(5) provides:

If the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense, increase by 4 levels.

7. U.S.S.G. § 2K2.1(b)(1)(B) provides:

If the offense involved three or more firearms, increase as follows: (B) 5-7 [firearms] add 2 [levels].

"fair and just" reasons including that he was coerced into making the plea, that he misunderstood the consequences of his plea, that he was denied effective assistance of counsel, that he had a colorable entrapment defense, and that his responses at the Rule 11 hearing did not preclude the withdrawal of his plea. The government argues that Messino's plea was given freely, voluntarily, and knowingly under the totality of the circumstances, that he was effectively represented by counsel, and that there was no factual basis for the giving of an entrapment defense.

A hearing on a motion to withdraw a plea is to be 'routinely granted' if the movant offers any 'substantial evidence that impugns the validity of the plea.' But if no such evidence is offered, or if the allegations advanced in support of the motion 'are mere conclusions or are inherently unreliable,' the motion may be denied without a hearing. Further, if the allegations set forth in the motion contradict statements made by the defendant at an acceptance-of-plea hearing which satisfied the requirements of Rule 11, the allegations must overcome the 'presumption of verity' that attaches to such statements. *United States v. Redig*, 27 F.3d 277, 280 (7th Cir.1994) (citations omitted).

■ When a defendant wishes to withdraw his plea after he states at a Rule 11 hearing that it was freely and knowingly given, he "faces an uphill battle in persuading the judge that his purported reason for withdrawing his plea is 'fair and just.'" *United States v. Groll*, 992 F.2d 755, 758 (7th Cir. 1993) (quoting *United States v. Trussel*, 961 F.2d 685, 689 (7th Cir.1992)). The presumption of verity is overcome only if the defendant "satisfies a heavy burden of persuasion." *United States v. Malave*, 22 F.3d 145, 148 (7th Cir.1994) (citation omitted). "The district court is generally justified in discrediting the proffered reasons for the motion to withdraw and holding the defendant to [his] admissions at the Rule 11 hearing." *Groll*, 992 F.2d at 758.

### 1. *Voluntariness*

■ The defendant's first assertion is that he was coerced into pleading guilty and that

his plea, therefore, was not voluntary. He claims that the prosecutor told him to take the plea if he "knew what was good for him," and that his children were made to sign affidavits containing evidence against their father upon threat of being subpoenaed to testify before the grand jury. Messino also contends that his attorney pressured his wife to urge Messino to enter a guilty plea, and urged Messino to accept the plea, with threats of a double sentence should he go to trial. Messino further argues that he misunderstood the consequences of his plea, believing that it would bar the government from filing any additional charges against him and would lead to the dismissal of the forfeiture actions that were the subject of this court's opinion in *Michelle's Lounge*, 39 F.3d 684.

"A guilty plea is voluntary when it is not induced by threats or misrepresentations and the defendant is made aware of the direct consequences of the plea. A guilty plea is intelligent and knowing when the defendant is competent, aware of the charges, and advised by competent counsel." *United States v. Jordan*, 870 F.2d 1310, 1316 (7th Cir.), *cert. denied*, 493 U.S. 831, 110 S.Ct. 101, 107 L.Ed.2d 65 (1989) (citations omitted).

> [C]laims of involuntariness or confusion that in the abstract seem like sufficient reasons to allow a defendant to withdraw his plea, or at least look into the matter further, may be insufficient in the context of a record containing substantial indications of voluntariness and lack of confusion. One especially important consideration is the defendant's answers to the questions posed at his Rule 11 hearing.... Since the trial judge, who is most familiar with the record and had the actual opportunity to observe the defendant during the Rule 11 hearing, is in the best position to determine whether a proffered reason is, in context, 'fair and just,' we review the decision not to hold an evidentiary hearing deferentially.

*Trussel*, 961 F.2d at 689–90 (citations omitted).

■ After reviewing the record from the Rule 11 hearing, including the signed plea agreement, there can be no doubt that the district court's determination that Messi-

no entered his plea of guilty knowingly and voluntarily was not clearly erroneous. With respect to Messino's contention that he misunderstood the consequences of his plea agreement, "this court has adopted a totality of the circumstances approach.... We consider the complexity of the charge, the defendant's level of intelligence, age and education, whether the defendant was represented by counsel, the judge's inquiry during the plea hearing and the defendant's statements, as well as the evidence proffered by the government." *LeDonne*, 21 F.3d at 1423 (citations omitted). Messino is a high school graduate, and more importantly, a former Chicago police officer, trained, educated, and experienced in the field of criminal law. He served as an officer for eight years, during which time he undoubtedly testified in countless criminal hearings and trials. The charges were straightforward and one with Messino's police employment background, knowledge, experience, and education certainly had the ability to understand the nature of the charges against him to which he was pleading guilty.

Additionally, the plea agreement specifically stated that Messino "has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney." Messino signed the agreement stating that he "is in fact guilty to the charges contained" in the indictment and he fully understood the "nature and elements of the crimes with which he [had] been charged." The defendant was informed of each and every possible maximum sentence for the crimes with which he was charged and specifically agreed to the fact that "the sentencing judge is neither a party to nor bound by this Agreement and is free to, subject to the limitations of the sentencing guidelines, impose the maximum penalties as set forth in [this Agreement]." Messino also acknowledged that

> the sentencing judge is neither a party to nor bound by this Agreement and is free to, subject to the limitations of the sentencing guidelines, impose the maximum penalties as set forth ... above. The defendant further acknowledges that if the court does not accept the sentencing recommendations of the parties, the defen-

dant will have no right to withdraw his guilty plea.

Finally, the very last paragraph of the signed agreement reads: "Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement."

During the plea hearing, even though the defendant was an eight year veteran of the Chicago Police Department, the district court was meticulously careful to ensure that the defendant understood the nature of the charges he was facing, as well as the maximum sentence he was facing. The district judge began the plea hearing by explicitly advising the defendant Messino that:

> [T]he Court will not accept a plea of guilty unless the Court is satisfied that you understand your rights and that you are in fact guilty, and so to that end I must, as I say, ask you some questions. If you do not understand any of the questions or for any reason wish to consult with Mr. Brunell, your attorney, *don't hesitate to do so at any time, because it is important that you understand each question and each step of the proceedings as we go forward.*

(Emphasis added). After reading the indictment aloud to the defendant, the judge and Messino engaged in the following colloquy:

THE COURT: Now, have you had a full and ample opportunity to discuss your entire case with your attorneys, *including all possible defenses?*

THE DEFENDANT: Yes, Your Honor, I have.

THE COURT: Are you fully satisfied with your attorney's advice and representation to you in this case?

THE DEFENDANT: Yes, Your Honor, I am.

\* \* \* \* \* \*

THE COURT: All right. Now, the next question that I have, have you had a full and ample opportunity now to read through this plea agreement and discuss it with your attorneys?

THE DEFENDANT: Yes, yes, sir.

(Emphasis added). The court went on to explicitly warn the defendant about the maximum penalties which he was facing for each crime charged, as well as the total maximum sentence he could serve:

> Counts 1, 2, 3, and 9 each carry a maximum penalty of 20 years' imprisonment ... counts 4, 5, and 7 each carry a maximum penalty of ten years' imprisonment.... [T]he total potential sentence carried under the counts to which you would be pleading guilty is up to 115 years' imprisonment.

The defendant stated that he understood that he was subject to those maximum penalties. In addition to re-explaining the maximum potential time to be served, the court also warned Messino that under the Sentencing Guidelines, there would be no possibility of parole or early release, except for a possible limited good time allowance. The court also enumerated all the specific trial rights contained in Rule 11(c)(3) and (4) and that Messino would be waiving each of them if he pleaded guilty to that particular count.[8] He stated that he understood those rights and was knowingly waiving them. Once again, the defendant confirmed, on the record, that he had discussed these waivers with his attorneys.

Furthermore, the court specifically addressed the issue of coercion and asked the defendant:

> THE COURT: Now, aside from the written plea agreement that you have entered into with the Government then, Mr. Messino, has anyone promised you any reward or understanding or in any way threatened or forced or coerced you into pleading guilty to these charges?
>
> THE DEFENDANT: No, sir.
>
> * * * * * *
>
> THE COURT: All right. Then, Mr. Messino, knowing the nature of the charges

against you and the consequences thereof and the penalties that may be imposed upon you, and knowing your rights, do you still persist then and do you now then enter a voluntary plea of guilty to the various counts and the crimes as previously stated?

> THE DEFENDANT: Yes, sir.

The judge also questioned the prosecuting attorney, in the presence of the defendant and his attorney, about the factual basis for the charges against Messino. The following exchange took place in open court:

> THE GOVERNMENT: Basically, Your Honor, the Government would provide the testimony of [the CI], the tapes that were made by [the CI], the testimony of surveillance agents that saw these incidents, as well as other lab witnesses that would testify as to the weapons as well as the narcotics. Basically, Your Honor, that would be the Government's evidence if this case went to trial.
>
> THE COURT: All right. Now, Mr. Messino, you understand the charges against you to which you would plead guilty. We have read those and now you have heard in summary fashion the evidence that would be presented should this case come to trial. Is that statement of facts now substantially correct?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Did you then in fact commit the crimes charged?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And did you intend to commit the various acts that constitute the crimes as charged?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: All right. Then, Mr. Messino, knowing the nature of the charges against you and the consequences thereof and the penalties that may be imposed upon you, and knowing your rights, do you

---

8. The district court cautioned Messino that he was giving up his right to a speedy and public trial at which he would be represented by counsel, the right to an impartial jury of his peers, that he would be presumed innocent and that the government would have to prove every element of the charges against him beyond a reasonable doubt, that the jury must be unanimous in its determination of guilt, that he would have the right to present witnesses in his defense and cross-examine all the government's witnesses, that he would not be compelled to testify, nor could the jury draw any adverse inference from his failure to testify, and that he would have the right to appeal any errors alleged during the course of the trial.

still persist then and do you now then enter a voluntary plea of guilty to the various counts and the crimes as previously stated?

THE DEFENDANT: Yes, sir.

THE COURT: All right, and Mr. Brunell, do you know of any reason now why your client should not plead guilty at this time?

MR. BRUNELL: No, Your Honor, I do not.

THE COURT: All right. The Court finds then that the defendant understands and comprehends the nature of the charges against him the consequences thereof, the possible penalties that may be provided in the event his plea of guilty to the stated crimes is voluntary, and the Court further finds that there is a factual basis for the plea of guilty to each of the crimes as set forth herein.

Finally, at the end of the plea hearing, Messino specifically thanked the judge for giving him the time to confer with his family before entering into the plea agreement.

During the rather lengthy colloquies between the court and Messino, the judge had ample opportunity to observe the defendant's demeanor and assess whether he was, in fact, making a voluntary plea. In the words of the district court:

The defendant was placed under oath and the importance of the oath was explained to him. The Court had a lengthy opportunity, as it had on previous occasions, to observe the Defendant's demeanor, facial expressions, emotions, and manner while testifying. At the time of the plea, there was no indication to the Court that Messino's guilty plea was not voluntarily made and trial rights knowingly waived. To the contrary, when accepting Messino's sworn testimony, the Court specifically found that the Defendant understood and comprehended the nature of the charges against him, the consequences thereof, the penalties he faced, and that the plea was voluntarily given.

Messino's contentions about coercion are unpersuasive and lack support in the record before us. The government had tape recordings of four separate cocaine transactions between Messino and the CI, two separate firearms transactions, and nine separate negotiations between Messino and the CI. ATF agents monitored each of these negotiations and transactions. Additionally, Messino's fingerprints were on the package of cocaine that the CI purchased on September 16, 1991. In light of the overwhelming evidence of his guilt, the prosecutor's statement that it would be in Messino's "best interest" to plead guilty was well reasoned and proper in light of an attorney's ethical obligation to a defendant, and should not be considered as coercive. By pleading guilty, Messino assured himself a two level reduction in his offense level pursuant to U.S.S.G. § 3E1.1(a) for acceptance of responsibility. While a prosecutor cannot coerce or threaten a defendant to plead guilty, he certainly can and should inform a defendant of the nature of the evidence against him, the likelihood of conviction, and the consequences of a guilty plea, as well as explain to him what course of action, based upon that attorney's knowledge, judgment and experience, would, in his opinion, be the best to follow.

In our opinion, the action of the prosecutor in discussing the defendant's real estate transactions with his adult children, falls far short of prosecutorial misconduct. The government had knowledge of the fact that the defendant's children had information about the defendant's ownership of real and personal property which were the subject of the forfeiture action. The government merely gave Messino's children the choice of whether they wished to reveal this information to the court in affidavit form, or under subpoena from the grand jury. If anything, the prosecution spared Messino's children the pain of having to give testimony under oath against their father.

Messino's own attorney also made the permissible assessment that Messino would most likely be convicted should he choose to go to trial. When he told Messino and his wife that a plea of guilty was in Messino's best interest, he was merely carrying out his professional responsibility of advising his client of the probable outcome of a trial and offering a learned recommendation based upon his experience with and knowledge of the

law. If we were to hold that urging a client who is facing an overwhelming amount of evidence of guilt against him to consider entering into a plea agreement is coercive, then we would make it impossible for defense attorneys to properly fulfull their professional responsibilities of advising their clients and would serve to encourage wasting court time and government resources on trials wherein the outcome is almost a foregone conclusion.

Messino claims that he was under the impression that the civil forfeiture actions of his real and personal property would be dropped if he pleaded guilty. We read the agreement differently, however, for the government agreed only to drop its insistence that he *concede,* in the plea agreement, that he acquired his assets with drug money and that the forfeiture action was, therefore, proper. The government made no promises, however, that it would not seek forfeiture in any other case that might be brought against the defendant. In fact, the plea agreement specifically stated that "[n]othing in this Agreement precludes the prosecution of defendant Clement Messino for alleged violations of federal law other than those charges specifically set forth in indictment 92 CR 69."

Finally, the district judge found that Messino's allegations and statements were "inherently unreliable." *Redig,* 27 F.3d at 280. He based this determination on a number of factors including the defendant's demeanor at the plea hearing, including his responses during the questioning, his status as a convicted felon, and the fact that he escaped from federal custody *while these charges were pending.* We have held many times that the district judge is in the best position to assess the credibility of the defendant because the judge is intimately familiar with the record and has the opportunity to observe the defendant's demeanor at the hearing. *See, e.g., Trussel,* 961 F.2d at 689–90. We will not second-guess his determination lightly.

In light of these factors, and the overwhelming evidence of guilt presented, the district court's determination that Messino knowingly and voluntarily entered a plea of guilty was not clearly erroneous.

2. *Assistance of Counsel*

"In order to succeed on [an ineffective assistance of counsel] claim, a defendant must show that advice on which his plea was predicated not only 'was not within the range of competence demanded of attorneys in criminal cases,' but also that there is a 'reasonable probability that, but for counsel's unprofessional error, the result ... would have been different.'" *Malave,* 22 F.3d at 147 (quotations omitted). "In examining a lawyer's performance, we 'indulge a strong presumption that the counsel's conduct falls within the wide range of reasonable professional assistance.'" *Trussel,* 961 F.2d at 690 (quoting *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984)).

 The defendant, an eight year veteran of the Chicago Police Department, in another bald, unsupported assertion, alleges that his attorney mistakenly informed him that if he pleaded guilty, the prosecution would be barred by double jeopardy from charging him with any other crimes of the same nature, that there were no defenses in his case, and that his attorney did nothing to prepare for trial such as getting copies of the tape recorded conversations or filing any pre-trial *Brady* or suppression motions on Messino's behalf. Messino, in spite of all his experience in law enforcement and knowledge of the overwhelming amount of evidence the government had against him, as well as the time and effort his attorney and the court put into advising and questioning during the plea agreement proceedings, contends that but for his attorney's actions, he never would have pleaded guilty.

Once again, we note that the judge's determination that the defendant was "inherently unreliable" was not clearly erroneous. Messino's first attorney refused to discuss any details of the case with the government unless the defendant waived the attorney-client privilege in writing. The defendant refused to do so and thus, the only support for the allegation that Messino's attorney made a misrepresentation about double jeopardy is in his own affidavit. The plea agreement,

however, makes it clear that it pertains only to the current charges and in no way limits the government in bringing further charges against the defendant. Additionally, the defendant alleges that his attorney did not even know the precise nature of the potential charges. We find it virtually impossible to believe that an attorney appointed to defend a client in the federal system would make promises about double jeopardy before he even knew the nature of potential charges.

Messino also claims that he never had transcripts of the tape recorded transactions, although the government responds that it had an open file policy and that Messino's attorney did, in fact, have access to the transcripts. The defendant never claims that he did not hear the tapes, or that he even requested and was denied access to the tapes or transcripts, but rather, he only claims that he was not provided with copies of the transcripts of the conversations on the tapes. Messino, however, does not dispute that the government did, in fact, provide his attorney with full access to the tapes and transcripts. Messino's utter failure to rebut the government's claim that he and his attorney were provided full access to the tapes and transcripts, renders this argument meritless.

■■■ The defendant also argues that his attorney should have filed a *Brady* motion to obtain any potential exculpatory information. While there is some evidence to suggest that while the CI was conducting his investigation he may have engaged in an unauthorized narcotics sale, even if true, this information is not exculpatory for two reasons. First of all, the government had no idea that the CI was engaging in unauthorized narcotics purchases during the transactions so the government's credibility is not undermined. Furthermore, the tapes speak for themselves. The defendant willingly engaged in drug and firearms sales with the CI. The CI's credibility had nothing to do with the acts of the defendant.

A competent attorney will not be criticized for having encouraged a plea agreement in this case. Messino's attorney was competent, and there is no evidence, other than Messino's own self-serving and unsupported assertions, to suggest that with another attorney, Messino, an eight-year veteran police

officer, would not have pleaded guilty to the crimes charged. Therefore, we hold that the district court's determination that Messino received effective assistance of counsel was not erroneous.

### 3. *Entrapment Defense*

■■■ "[W]hether an entrapment defense amounts to a fair and just reason for withdrawing a guilty plea depends upon the circumstances of the particular case." *Groll*, 992 F.2d at 758 (citations omitted). The entrapment defense has two elements: "government inducement of a crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Id.*

■■■ Messino argues that he was specifically targeted by the government and that he engaged in protracted negotiations before finally succumbing to the CI's offers for cocaine and firearms. He believes that these factors support a colorable entrapment defense. We disagree.

There is no evidence in this record to support Messino's contention that he ever expressed any reluctance to become involved in the sales. To the contrary, the tapes clearly and unequivocally establish that he dealt very carefully with the CI, on occasion personally checking him for a wire, and using code words common to drug dealers during the transactions. Aside from Messino's bald, unsupported assertions that he was entrapped, the evidence to the contrary demonstrates that he was eager, ready, willing and able to enter into drug and firearm transactions with the CI.

### 4. *Responses at the Rule 11 Hearing*

■■■ Messino's final contention is that because he was only asked questions requiring yes or no answers at the plea hearing, the judge failed to engage him in a meaningful colloquy to ensure that his plea was knowing and voluntary. Because he was "surrounded" by attorneys who were urging him to plead guilty, Messino argues that it was unrealistic to expect him to elaborate on his answers.

We have never required "strict adherence to the strictures of [Rule 11]; rather the focus is on 'whether, looking at the total circumstances surrounding the plea, the defendant was informed of his or her rights.'" *U.S. v. Fountain*, 777 F.2d 351, 355 (7th Cir.1985) (quotation omitted). As discussed above, the district court conducted a thorough Rule 11 hearing, informing Messino about the charges against him and the consequences of his plea. The defendant affirmed that he was entering into it voluntarily and his demeanor suggested nothing to the contrary. We have not and do not intend to mandate a specific format or dialogue to be followed in a Rule 11 hearing. If the defendant is fully apprised of his rights and the consequences of his actions, and he knowingly and voluntarily enters into the entire contents of the plea agreement, the hearing is proper. This district court committed no error and we commend the trial court for the meticulous manner in which it accepted Messino's pleas and its denial of his motion to withdraw that plea. The court's actions did not amount to an abuse of discretion.

### B.

In support of his claim that he was improperly sentenced, Messino raises three claims: (1) that the district court based its determinations on the unreliable hearsay of the CI; (2) that the court clearly erred when it found that Messino knew that the firearms were to be used in the commission of another felony; and (3) that the government engaged in sentence manipulation so that the court would base his sentence on the sale of six firearms, when it could only properly consider the sale of the first four.

### 1. *Hearsay as the Basis for Messino's Sentence*

■ At the sentencing hearing, Agents Harris and Ivancich testified about conversations they had with the CI regarding his meetings with Messino. The defendant argues that the judge improperly based his sentencing determinations on this hearsay testimony. Although the defendant acknowledges that hearsay is generally admissible in sentencing hearings, he argues that this particular testimony was unreliable because of the CI's alleged narcotics buys and, therefore, it was an abuse of discretion to admit the testimony.

There is no question but that a criminal defendant has a due process right to be sentenced on the basis of accurate information. Nonetheless, there are few restrictions on the type of information the sentencing court may consider. Hearsay evidence is one of the types of information a court may consider. To succeed on a challenge to a sentence, a defendant must show that the information before the court was inaccurate, and that the court relied on it. *United States v. Musa*, 946 F.2d 1297, 1306 (7th Cir.1991) (citations omitted). "'The district court is empowered to consider this broad range of information so that it may impose the sentence most appropriate to the defendant's circumstances.'" *Campbell*, 985 F.2d at 348 (quotation omitted). Furthermore, the Sentencing Guidelines authorize a court to "consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a).

The defendant argues that the CI's credibility "left a great deal to be desired," and as a result, any information received from him was unworthy of credence at the sentencing hearing. In part, he bases this argument on the fact that the CI lied about his involvement with a street gang and his past crimes. What Messino fails to realize, however, is that the CI lied about these crimes *to gain Messino's trust and induce him into believing that he was a fellow criminal, rather than an informant.* Clearly, these statements were all part of the modus operandi of a trained informant and do not bear on his credibility in the least.

Furthermore, although the CI did engage in an unauthorized purchase of cocaine, this would be relevant only if his statements were accepted for the truth of the matter, as Messino asserts they were. A reading of the sentencing transcript clearly establishes that the statements were not admitted for their

truth. For example, Messino contends that the judge knew that he used rubber gloves to handle the drugs and that the only evidence about these gloves came from the CI's statements. The defendant is wrong, however, because in the pertinent part of the tape recorded conversation presented at the sentencing hearing, the CI asked Messino, "Why do you have those rubber gloves?" and the defendant replied, when referring to the drugs, "Handle those things, that's why." The defendant essentially convicted himself with the evidence recorded on the tapes. The fact that Messino was wearing gloves came out of his own mouth and the court did not have to consider the CI's statement in the least.

Messino's next contention is that because the CI assisted in the preparation of the transcripts of the tape recorded conversations, the CI's credibility was directly an issue at sentencing, and he should have been allowed to cross-examine the CI in order to impeach his credibility. This argument also fails because, as the district court noted, it was not reading the transcripts to ascertain the truth of the matter asserted in them, but rather, it was "looking to the perception of Mr. Messino in selling those guns to [the CI]." At sentencing, the judge specifically stated:

> I am not accepting anything said by the [CI] on these tapes for the truth of the matter asserted. What I have looked for in reviewing the transcripts of the tapes are only the portions of the tapes that I heard. Nothing else is being considered by me. And each of those I have marked and reviewed them again.

At a later point in sentencing, the judge reiterated that he was basing his sentence only on "the reaction and language used.... I am not relying on the credibility of [the CI], who, of necessity in an operation such as this, is not going to be telling the truth anyway." Therefore, in reply to the defendant's assertion that the court relied on unreliable hearsay, we hold that the district court clearly did not abuse its discretion when it sentenced Messino based on the testimony of Agents Harris and Ivancich.

9. "Scores" is a slang term for criminal activity.

## 2. Messino's Knowledge of the Intended Use for the Firearms

The defendant argues that the U.S.S.G. § 2K2.1(b)(5) sentence enhancement for transferring firearms he knew would be used in another felony offense was not justified. In support of this argument, the defendant contends that he had no knowledge of a specific felony in which they would be used, and therefore, there was no basis to find that the weapons would be used "in connection with" another offense. To date, this circuit has not interpreted the language of § 2K2.1(b)(5) but we do wish to make it clear that we agree with the First Circuit that the provision should be given its ordinary meaning. *United States v. Brewster,* 1 F.3d 51, 54 (1st Cir.1993). Therefore, "[i]f ... [the] appellant sold the gun with reason to believe that his customer planned to use it in connection with [another felony, then] a sufficient nexus exists between the weapon and the [felony] to warrant imposition of the enhancement." *Id.* From the evidence presented at the sentencing hearing, and the transcripts of the tape recorded conversations, it is clear that Messino believed that the weapons he sold the CI would be used to commit other felonies.

Messino was told that the CI was well connected with local crime figures and that he was willing to commit murder. When the defendant Messino sold the CI weapons on November 17, he told the CI that he wanted him to use the gun against an unnamed woman, "and pull the trigger." This statement was made after Messino offered the CI cocaine in exchange for killing his girlfriend. The CI also told Messino that he was planning some "scores" [9] in the near future. Additionally, although the judge did recognize the fact that the weapons (not the silencer) sold to the CI could be used for target practice, it is highly implausible that Messino thought he was selling the CI weapons for target practice when the CI boasted of his connections to crime, agreed to murder Messino's ex-girlfriend in exchange for some cocaine, and was speaking of the "scores" he was planning. Finally, the defendant sold

the CI a silencer. Why else would a person purchase a weapon and a silencer, both with their serial numbers scratched off, all while simultaneously discussing a murder, unless he was going to use it to commit another felony?

The defendant may not have known *exactly* how and when the CI was going to use the weapons, but he did personally solicit the CI to commit the crime of murder with those weapons, and knew that the CI planned to use them in future drug "scores." The district court noted that "based on all of the ... language that was used, the subject matter, the flow, the concern to avoid detection, all of that causes the court to conclude, then, that Mr. Messino did think that these guns would be used ... for another felony offense." As such, the sentencing judge was not clearly erroneous in his conclusion that Messino sold the weapons with the knowledge and belief that they would be used in another felony offense.

### 3. *Sentence Manipulation*

Messino's final argument is that the two point offense level enhancement for selling more than five firearms was the result of governmental sentence manipulation. The doctrine of sentencing manipulation states that a judge cannot use evidence to enhance a defendant's sentence if the government procured that evidence through outrageous conduct solely for the purpose of increasing the defendant's sentence under the Sentencing Guidelines. *See United States v. Rogers,* 982 F.2d 1241 (8th Cir.1993); *United States v. Connell,* 960 F.2d 191 (1st Cir.1992); *United States v. Bara,* 13 F.3d 1418 (10th Cir. 1994). The defendant claims that the government engaged in this behavior when it continued to use the CI even after it found out that he engaged in an unauthorized purchase of drugs from Messino. By the agents' own admissions, the general policy is to discontinue using an informant when that informant makes unauthorized purchases. Messino contends that the only reason that they continued to use the CI was to ensure that Messino made another sale of weapons to him so that the government could petition for another increase in sentence.

This court has not recognized the doctrine of sentence manipulation although we have had occasion to comment on it:

> Several courts of appeals have intimated that sentencing adjustment may be in order when the government structures its stings solely with an eye toward wielding that power. Our inclination, however, is not to subject isolated government conduct to a special brand of scrutiny when its effect is felt in sentence, as opposed to offense, determination.... so long as it does not rise to the level of ... conduct 'so outrageous that due process principles would absolutely bar the government from invoking judicial processes.'

*United States v. Cotts,* 14 F.3d 300, 306 n. 2 (7th Cir.1994) (quotations omitted). We decline to extend the application of this doctrine any further than for the most outrageous governmental conduct. In the case at bar, no such conduct exists.

In order to accept Messino's argument, the defendant would have to establish that the government specifically continued to employ the CI for the purpose of pursuing another two point enhancement such that the defendant's due process was violated. The district court recognized that "the government can certainly have a legitimate concern about sufficiency of proof. The jury has to be persuaded.... Juries may find, if there is only a single transaction, that that's not enough." This determination was not clearly erroneous. Furthermore, if the government really wanted to enhance Messino's sentence, it could have authorized the CI to try to buy other weapons in addition to those already purchased. The fact that it refrained from doing so makes it clear that the government was not engaged in deliberate sentence manipulation. In the words of the district judge:

> it seems to me that the quantities were not unusual or would indicate that they had overborne the will of Mr. Messino who is predispose[d] only to commit a lesser crime.... It seemed to me that Mr. Messino was comfortable with the amounts that were involved and that it did not seem that there were forced transactions here.

The facts upon which the district court relied when sentencing Messino were not clearly erroneous nor received in evidence in an abusive fashion. Therefore, the sentence imposed by the court was entirely proper. Furthermore, the denial of the defendant's motion to withdraw his guilty plea did not amount to an abuse of discretion.

The decision of the district court is

AFFIRMED.