NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 8, 2012
Decided September 19, 2012

**Before**

WILLIAM J. BAUER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 12-1318

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

*v.*

RICHARD J. SECHRIST, JR.,
    *Defendant-Appellant.*

Appeal from the
United States District Court for the
Eastern District of Wisconsin.

No. 11-CR-195

William C. Griesbach,
*Judge.*

# O R D E R

Richard Sechrist pleaded guilty to committing an assault resulting in serious bodily injury while on the Menominee Indian Reservation in northern Wisconsin. *See* 18 U.S.C. §§ 113(a)(6), 1153(a). He then moved, through counsel, to withdraw his guilty plea. After the district judge denied that motion, Sechrist sent a handwritten letter to the court again asking to withdraw his plea, which he insisted had been entered as the result of pressure from his counsel. The judge also denied this second request and imposed a sentence of 66 months' imprisonment—double the upper end of the guidelines range—citing the significant brutality of the assault, Sechrist's history of domestic violence, and his evident lack of remorse. On appeal Sechrist argues that the district court abused its discretion in

refusing to permit him to withdraw his guilty plea. He also argues that the court imposed an unreasonable sentence. We reject both contentions and affirm.

## I. Background

Sechrist accompanied Jennifer Peterson (his then-girlfriend), their infant son, and Peterson's child from a previous relationship on a visit to Peterson's grandmother at her home on the Menominee Indian Reservation. After drinking beer with Peterson, Sechrist left the residence to buy more, and when he returned, he found Peterson talking on the phone with the father of her other child. Angered by that conversation, Sechrist grabbed her by the hair, dragged her outside—in sight of the children and grandmother—and repeatedly punched and kicked her in the head. Sechrist then held Peterson up by her hair, struck her in the face, and finally, choked her until she was unconscious.

Peterson's grandmother called the tribal police, and when officers arrived, they found Peterson in a bedroom with blood all over her hands, face, and clothes. Sechrist approached the officers and demanded to know why they were there. He was arrested but denied assaulting Peterson. Peterson's grandmother, who had witnessed the assault, told police that Sechrist struck Peterson between 30 to 40 times. Peterson was taken to a hospital, where she was treated for a nasal fracture and cuts and abrasions to her face, scalp, back, knees, and one arm. Peterson told the doctors that she was in extreme pain. She later wrote a letter to law enforcement describing herself as a "hostage" in the relationship. She said that Sechrist had repeatedly threatened to kill her and her children if she reported his abuse to the police.

Sechrist was indicted on one count of committing an assault resulting in serious bodily injury within Indian country in violation of 18 U.S.C. §§ 113(a)(6) and 1153(a). After consulting with his appointed counsel, Sechrist agreed to plead guilty. In his written plea agreement, Sechrist acknowledged his guilt and represented that he wasn't threatened or induced by other considerations to plead guilty. At the change-of-plea hearing, the district judge placed Sechrist under oath and conducted a plea colloquy that substantially complied with Federal Rule of Criminal Procedure 11. Sechrist acknowledged that he understood the terms of the plea agreement, the elements of the charged crime, and the possible penalties. He said that he understood his right to maintain his plea of not guilty but was pleading guilty because in fact he was guilty, and not because of any threat or inducement. The judge concluded that Sechrist's guilty plea was knowing and voluntary and accepted it.

Before sentencing Sechrist moved through counsel to withdraw his guilty plea. In the motion counsel explained simply that "Sechrist now desires to go to trial." Three days

later Sechrist had a change of heart, and counsel asked to withdraw the motion. But the judge already had denied it because Sechrist had given no "fair and just reason" for asking to withdraw his guilty plea.  *See* FED. R. CRIM. P. 11(d)(2)(B).

A few weeks later, Sechrist wrote the district court directly, again asking to withdraw his guilty plea and also requesting new counsel. He complained about his lawyer: "I asked him to change my plea once and he talked me out of it. . . . It just felt like he was pushing me to take the guilty plea when I didn't want to." At a hearing to resolve this motion, Sechrist said he had told counsel he wanted to go to trial but the lawyer "just kept saying that I shouldn't and pretty much pushed me into signing" the plea agreement. The judge responded that Sechrist seemed to be saying only that his lawyer had told him that he had very little chance of winning at trial and explained that his lawyer's candor on that point was not a basis for withdrawing a guilty plea. Sechrist answered that he hadn't wanted to sign the plea agreement, but did so "pretty much" to satisfy his lawyer. The judge rejected that rationale, denied the motion, and the case proceeded to sentencing.

The presentence report detailed Sechrist's criminal history, including several convictions for attacks on a fomer girlfriend. On one occasion he hit his former girlfriend; on another he struck her in the face with a board; on another he choked her into unconsciousness; and another time they had a "confrontation" that resulted in her being taken to a hospital (but not before Sechrist had taken a swing at the ambulance driver). The former girlfriend later told police that after she ended their relationship, Sechrist came to her house, smashed her car window while she and her three-year-old daughter were inside, and warned, "You better watch yourself, you know what will happen to you." Sechrist also had a prior arrest for attacking Peterson in 2009. In that incident she reported that he grabbed her by her hair and punched her in the head. Nothing came of the arrest because Peterson later claimed that she could not recall the incident. Sechrist also had convictions for a DUI and retail theft. Finally, his probation was twice revoked for not attending required substance-abuse programs.

Sechrist's only objection to the presentence report concerned the inclusion of a statement that Peterson had been choked; he wanted that portion deleted because the allegation had been removed from the charging document during plea negotiations. The district judge overruled the objection. The judge calculated a guidelines imprisonment range of 27 to 33 months, based on a total offense level of 16 and criminal-history category of III.

The judge then discussed the sentencing factors listed in 18 U.S.C. § 3553(a) and concluded that a prison sentence within the guidelines range would not provide adequate punishment. In particular, the judge cited Sechrist's repeated abuse of his former girlfriend,

his failure to come to grips with his alcoholism, his cruelty in beating Peterson without provocation in front of her children and grandmother, the brutality of the assault, and his past threats to kill her and the children if she reported him to the police. The judge also expressed his mistrust of the guidelines range as calculated, which did not account for Sechrist's convictions in tribal court, *see* U.S.S.G. § 4A1.2(i), and said that the range was too low when compared with the higher ranges for some nonviolent crimes, such as drug offenses. He also cited Sechrist's lack of remorse, as shown by his anger when he discovered that the police had been summoned after the beating and his attempt to poke holes in the government's case during the hearing on his motion to withdraw his guilty plea. (Sechrist had insisted that prosecutors couldn't prove Peterson's nasal fracture was recent, rather than from a past accident, and he also said that if it was true that he struck Peterson 30 to 40 times, she would have suffered more than just a broken nose.) The judge imposed a sentence of 66 months. Sechrist appealed.

## II. Discussion

On appeal with new counsel, Sechrist first challenges the denial of his motion to withdraw his guilty plea. We review the court's ruling for abuse of discretion. Sechrist's sworn statements that he was pleading guilty knowingly and voluntarily are presumed to be true, so he bore a "heavy burden of persuasion" in demonstrating to the district court that he had a valid basis to withdraw his plea. *United States v. Redmond*, 667 F.3d 863, 870 (7th Cir. 2012); *see also United States v. Chavers*, 515 F.3d 722, 724 (7th Cir. 2008). In this situation, a district court is generally free to discredit a defendant's claim that his plea was entered involuntarily and to hold him to his admissions at the plea colloquy. *United States v. Schuh*, 289 F.3d 968, 975 (7th Cir. 2002); *United States v. Messino*, 55 F.3d 1241, 1248–49 (7th Cir. 1995).

The district court did not abuse its discretion. Based on Sechrist's statements in his written plea agreement and the plea colloquy, the judge was well within his discretion to reject Sechrist's contention that he was pressured into pleading guilty, and to conclude that he lacked a fair and just reason for setting aside his plea. Sechrist now characterizes the pressure from his former counsel as "extreme," but at the hearing on the plea-withdrawal motion, he claimed only that his counsel advised him that he "shouldn't" go to trial. There is nothing suspect about this advice. *See Messino*, 55 F.3d at 1252 (noting that defense counsel who urges client to plead guilty in face of overwhelming evidence fulfils his professional responsibilities); *see also Gallo-Vasquez v. United States*, 402 F.3d 793, 798 (7th Cir. 2005) (noting that counsel might not provide effective assistance by advising client to reject plea bargain and go to trial in face of overwhelming evidence and absence of

defenses). The district court concluded that Sechrist had not overcome the presumption that his sworn statements during the plea colloquy were truthful—including his statement that his guilty plea was voluntary. That finding was not an abuse of discretion. *See Schuh*, 289 F.3d at 975; *see also United States v. Stewart*, 198 F.3d 984, 987 (7th Cir. 1999).

The only wrinkle we note is that the judge did not immediately clarify the role of Sechrist's lawyer at the hearing on the plea-withdrawal motion. The judge began by construing Sechrist's letter as a "pro se motion to withdraw a guilty plea and for appointment of new counsel." Although in his letter Sechrist did not say that he wished to represent himself, the court noted some confusion about whether Sechrist or his lawyer, Tom Phillip, would press Sechrist's motion:

> THE COURT: All right. Well, good morning all. We placed this on the calendar after the handwritten letter or—which we have construed as a motion—was received from Mr. Sechrist on December 30, 2011. Mr. Phillip, can you—Mr. Sechrist, I take it—is it still your desire to have a new attorney appointed and to withdraw your guilty plea?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Okay. Mr. Phillip, any comment? What is your—I mean I recognize your—are you asking to withdraw?
>
> MR. PHILLIP: Not on my own purposes but Mr. Sechrist, by his pro se motion, appears to want different counsel.

At this point the prosecutor suggested that before considering Sechrist's request for a new attorney, the court should "hear something from Mr. Sechrist as to what he hopes to accomplish and what he hopes to expose by way of the motion to withdraw before we get a new counsel involved and go down that road." The judge twice asked Sechrist why he thought he should be entitled to withdraw his plea. Sechrist answered the question both times; his counsel remained silent and offered no legal argument on Sechrist's behalf during the hearing. After listening to Sechrist's arguments, the judge announced that he saw no fair and just reason to allow Sechrist to withdraw his guilty plea nor any need to offer him substitute counsel. The judge later issued a written order denying the motion to withdraw the guilty plea but leaving the request for new counsel unaddressed.

To the extent there is ambiguity, however, we do not need to resolve it. Sechrist does not argue that he was deprived of his right to counsel. He has forfeited that argument by failing to raise it. *United States v. Johns*, 686 F.3d 438, 453 (7th Cir. 2012); *United States v. Parker*, 609 F.3d 891, 896 (7th Cir. 2010).

All that remains is Sechrist's argument that the judge failed to adequately explain his reasons for imposing the above-guidelines sentence. Sechrist insists that while the judge did discuss his individual characteristics and the particular harms he caused, he did not adequately explain the connection between those factors and the 66-month sentence that resulted.

We will uphold a sentence above the guidelines range as long as the district court reasonably applied the § 3553(a) factors and adequately explained why the sentence is appropriate. *United States v. Hill*, 645 F.3d 900, 911 (7th Cir. 2011); *United States v. Courtland*, 642 F.3d 545, 550–51 (7th Cir. 2011). Here, the judge did exactly that; he explained his decision at length and provided ample justification for the 66-month sentence. The judge noted Sechrist's repeated abuse of a former girlfriend and the need to deter him from continuing his pattern of domestic violence. He emphasized the particular severity of Sechrist's crime, which was unprovoked, occurred in front of children, and resulted in multiple injuries. He noted Sechrist's lack of remorse and threats to kill Peterson. Finally, the judge explained that the guidelines range was inadequate to account for the extreme violence of this offense when compared to the higher ranges for some nonviolent crimes. This explanation was easily sufficient to justify the sentence imposed.

**AFFIRMED**.