**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gary RANUM, Defendant–Appellant.**

No. 95–2512.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 13, 1995.

Decided Sept. 25, 1996.

Larry Wszalek, argued, Office of the United States Attorney, Madison, WI, for Plaintiff–Appellee.

T. Christopher Kelly, argued, Reynolds, Thomas, Kelly & Habermehl, Madison, WI, for Defendant–Appellant.

Before ESCHBACH, COFFEY and EVANS, Circuit Judges.

COFFEY, Circuit Judge.

Gary Ranum was charged in a one-count information with "knowingly and willfully obtain[ing] by ... false statements" federally-insured student loan funds in an amount not exceeding $200, a misdemeanor violation of 20 U.S.C. § 1097(a) punishable by a term of imprisonment not to exceed one year and/or

a maximum fine of $1,000. Ranum used a false Social Security number on some eight separate occasions in order to obtain federally-insured loans totalling $7,586 and thus could have been charged with a felony in violation of § 1097(a), which carries a maximum penalty of five years' imprisonment and/or a maximum fine of $10,000. 20 U.S.C. § 1097(a). After negotiation, the Government agreed to charge Ranum with a misdemeanor offense in exchange for the defendant's agreement to plead guilty and pay restitution. With the advice of counsel, and pursuant to a signed, written plea agreement, Ranum entered a plea of guilty to a misdemeanor violation and agreed to pay restitution in the amount of $7,586. At the time of his plea hearing, the defendant consented to proceedings before a magistrate judge, pursuant to 28 U.S.C. § 636(a)(4). The magistrate judge accepted Ranum's plea after conducting a hearing to satisfy himself that the guilty plea was knowingly and voluntarily made. During the proceedings and before sentencing, Ranum requested of the court permission to withdraw his plea of guilty, alleging that it was invalid because he had not been made aware of all possible defenses available to him. The magistrate judge denied the motion and sentenced Ranum to three years probation and ordered him to pay restitution in the amount of $7,586, together with a criminal assessment penalty of $25.[1] Ranum appealed to the district court, pursuant to 28 U.S.C. § 636(c)(4), contesting the magistrate judge's order denying his motion to withdraw his guilty plea. The district court reviewed the proceedings and affirmed the order of the magistrate judge. Ranum appeals the denial of his motion to withdraw his guilty plea, and requests that he be permitted to proceed to trial. We affirm.

## I. BACKGROUND

### A. *Ranum's Loan Application(s)*

Gary Ranum is fifty-three years of age and is a college graduate (University of Wiscon-

---

1. As noted above, Ranum was sentenced to a term of three years probation without the imposition of any fine, even though the Guidelines also authorized substantial fines and a term of confinement up to six months.

sin 1973). He entertained the idea of becoming a physician for many years. Ranum attended the University of Iowa Physician Assistant Program in 1987–88, obtaining student loans for this purpose. In 1989, he registered for coursework at the University of Wisconsin ("UW") Medical School. He withdrew from the program after four months when it became clear that he could not qualify for financial assistance. Although the record is not as detailed as it might be, it appears that Ranum may very well have been denied financial aid on the basis that he was in default on a previous student loan (or loans) from earlier in his educational career. The record does not reflect but we assume that these loans were obtained using Ranum's valid Social Security number.

In January of 1991, Ranum registered for classes at the Madison Area Technical College ("MATC"), with the goal of obtaining certification as a real estate agent. In completing the registration paperwork, Ranum used a Social Security number that was not his own, but rather a number that differed from his own validly-issued Social Security number by one digit. Ranum admitted at his plea hearing that he was aware of this discrepancy, but alleges that this number was assigned to him mistakenly by MATC itself and that he used it to avoid the inconvenience of clearing up an administrative mistake (the record is devoid of any evidentiary support for this claim). In order to receive a federally-insured educational loan from a private lender, one must first provide certain information to the U.S. Department of Education to establish eligibility for such a loan.

Accordingly, in mid-February 1991, several weeks after registering at MATC, Ranum completed and signed a Financial Aid Form ("FAF")[2] for the academic year 1990–91, again entering the same false Social Security number, and submitted the document to the Department of Education for processing. In early April 1991, Ranum received, signed, and returned to the Department of Education a verification form known as a "Student Aid Report" ("SAR"), which set forth the false Social Security number that Ranum had previously provided on the FAF. The SAR form signed by Ranum stated, inaccurately, that the defendant was not currently in default on any previous student loans.[3] The defendant continued to use the bogus Social Security number on two promissory note applications that he executed and submitted to the lender, Great Lakes Higher Education Corporation ("GLHEC"), in April and May of 1991. The promissory note application forms stated that the applicant had not been in default with respect to any previous student loans, and further stated that the applicant had not received student loan assistance of any kind before July 1, 1988. However, the record reflects that Ranum was in default on earlier educational loans as late as 1989 (when he was denied financial aid at UW), and that he remained in default at the time he started using the false Social Security number to obtain financial aid at MATC in 1991.[4] Thus, the defendant was not only knowingly using a false Social Security number, but he was also giving the lender false information concerning his past and current loan default status.[5] Ranum also deceived the lender when stating that he had not

---

2. The FAF is used by the U.S. Department of Education to determine eligibility for various forms of federal student financial aid, including Stafford loans. .

3. Ranum denies that he provided this information concerning his default status knowing it to be false. At Ranum's plea hearing, defense counsel argued that because of "a complicated bankruptcy and representations from a previous attorney and many letters from [the lender to Ranum]," it was not clear that Ranum knew that he was in default at this time. The parties have agreed that the use of the false Social Security number alone is factually sufficient to establish the crime of making a false statement under 20 U.S.C. § 1097(a) (assuming that Ranum acted

with the requisite mens rea). The validity of Ranum's guilty plea is unaffected by the fact that the defendant was never specifically asked, at his plea hearing, about his statement that he was not currently in default on any previous student loan(s). Ranum was directly questioned by the magistrate judge about his knowing use of a false Social Security number; he was thus made sufficiently aware of the factual basis for the charge against him.

4. The record does not reflect the extent of Ranum's indebtedness, nor does it indicate the number of previous loans on which Ranum had defaulted.

5. Ranum denies this. See note 3 supra.

obtained any student loans prior to July 1, 1988, for the record clearly reflects that he obtained student loans in college during the early 1970's and again when he attended the Iowa Physician Assistant Program in 1987–88.

When applying for student loans for the 1991–92 academic year at MATC, Ranum repeated the pattern of fraud and deceit described above: entering the bogus Social Security number on a FAF, a SAR, and two promissory note application forms. The defendant continued to use the false Social Security number, with full knowledge that it was not his own, and ultimately obtained a total of $7,586 in financial aid while attending MATC.[6] Ranum's use of the false Social Security number to accomplish this fraudulent scheme was uncovered in an investigation by the U.S. Department of Education's Inspector General's Office.

Ranum concedes that he knowingly and willfully used a false Social Security number in filling out the student loan application forms. At the same time, he somehow claims that it was not his intention to deceive anyone with his use of the false number.[7]

## B. *Ranum's Plea Agreement & Hearing*

Ranum's written, signed plea agreement stated that he would enter a plea of guilty to making a false statement in violation of 20 U.S.C. § 1097(a), as set forth in the information,[8] in exchange for the Government's recommendation that he receive a two-level reduction in his Sentencing Guidelines offense level for acceptance of responsibility.

At the plea hearing, the magistrate judge conducted a colloquy with Ranum in order that he might ascertain whether his plea was voluntarily and knowingly made. Initially, the magistrate judge determined that Ranum had been afforded an adequate opportunity to discuss the plea agreement with his lawyer. Thereafter, the Government, at the request of the magistrate judge, summarized the plea agreement, including the nature of the charge and maximum penalties, in the presence of the defendant and for the court record. Ranum acknowledged that the prosecutor's summary of the crime as well as his participation in the scheme was accurate and thereafter entered a plea of guilty. When queried by the magistrate judge, he stated that no one had improperly influenced his decision to enter a plea of guilty, that he understood the crime with which he was charged, and that he was aware of the legal consequences of entering the guilty plea (including the waiver of constitutional rights such as the right to trial, etc., which the court reviewed in detail in addition to explaining the sentencing procedure that would be used following a plea). After reviewing these matters with the defendant in some detail, the court again sought to determine whether or not the defendant was entering his guilty plea knowingly and voluntarily:

> THE COURT: Let me ask this in a slightly different way. It sort of covers where we have already been. But under the United States Constitution, nobody can make you plead guilty to a crime. And by pleading guilty today, you are giving up that right and *admitting that you did what the government says that you did.* Do you understand that that is what is happening, and do you give up that right?
>
> RANUM: Yes, I do, Sir.

(emphasis added).

The Government then proffered the set of facts surrounding the crime that it was prepared to establish at trial, including the defendant's admission to the Department of Education investigator that he had obtained student loans by using a Social Security number well knowing that it was not his own. Ranum himself, when queried by the magistrate judge concerning the factual basis for the charge, admitted that he knowingly used

---

6. Ranum used the false Social Security number in eight separate financial aid documents between January 1991 and February 1992, including four documents filed with the Department of Education and four promissory note applications submitted to the lender, GLHEC. As noted above, Ranum also used the false number when registering for coursework at MATC.

7. We discuss the merits of this claim in the discussion section of this opinion, *infra*.

8. The information tracked the language of the statute, charging that Ranum had "knowingly and willfully obtained [federally-insured student loan funds] ... by ... false statements."

a false Social Security number on the loan application. The court asked Ranum if he knew that the number he had used was not his own and Ranum replied: "That is correct. I am guilty of not changing that number in the records. I used that number that [MATC] had given me." Finally, Ranum again stated for the record that he was pleading guilty to the crime as charged.

The defendant Ranum was represented by counsel and was given ample opportunity to consult with his lawyer before entering his plea of guilty.

## II. ISSUE

The sole issue in this case is whether intent to deceive the Government is an essential element of the crime of making a false statement under 20 U.S.C. § 1097(a). Ranum contends that it is, and that consequently he had available to him a defense of which he was unaware at the time he entered his plea: namely, the defense that he lacked the intent to deceive the Government. Because he was not apprised of this defense, Ranum argues that (despite the assistance of counsel) his plea of guilty was not knowingly and voluntarily made and that he should have been permitted to withdraw his plea.

## III. DISCUSSION

### A. *Withdrawal of Guilty Pleas*

Due process and Federal Rule of Criminal Procedure 11 require that a defendant's guilty plea be voluntarily (i.e., not induced by threats or promises of any kind), and knowingly made. *See United States v. Musa*, 946 F.2d 1297, 1303 (7th Cir.1991); *Haase v. United States*, 800 F.2d 123, 127 (7th Cir.1986). Thus, the defendant must understand the elements of the crime to which he is pleading, as a guilty plea is an admission of all of the elements of the crime charged. *Musa*, 946 F.2d at 1303 (citing *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969)); *see also United States v. Seybold*, 979 F.2d 582, 586 (7th Cir.1992) (defendant must be informed of and understand "the nature of the charge" to which he is pleading). The defendant must also understand

"that his or her conduct actually falls within the charge[,] ... and should be made aware of possible defenses, at least where the defendant makes known facts that might form the basis of such defenses." *United States v. Frye*, 738 F.2d 196, 199 (7th Cir.1984).

While this court has emphasized the importance and the solemnity of Rule 11 hearings, such events need not provide the defendant with a detailed course on criminal procedure:

> We have never required strict adherence to the strictures [of Rule 11]; rather, the focus is on whether, looking at the total circumstances surrounding the plea, the defendant was informed of his or her rights. We have not and do not intend to mandate a specific format or dialogue to be followed in a Rule 11 hearing. If the defendant is fully apprised of his rights and the consequences of his actions, and he knowingly and voluntarily enters into the entire contents of the plea agreement, the hearing is proper.

*United States v. Messino*, 55 F.3d 1241, 1248 (7th Cir.1995) (citations and quotations omitted) (plea was knowing and voluntary despite the fact that defendant was asked only questions requiring yes or no answers). Our decisions have adopted a flexible, common-sense "totality of the circumstances" approach in determining whether or not a defendant fully understood the charges to which he pled. *United States v. LeDonne*, 21 F.3d 1418, 1423 (7th Cir.1994). Under this approach, "we consider the complexity of the charge, the defendant's level of intelligence, age and education, whether the defendant was represented by counsel, the judge's inquiry during the plea hearing and the defendant's statements, as well as the evidence proffered by the government." *Id.*

Rule 32(e) provides that "[i]f a motion to withdraw a plea of guilty ... is made before sentence is imposed, the court *may* permit the plea to be withdrawn if the defendant shows any fair and just reason." Fed. R.Crim. P.32(e) (emphasis added). One "fair and just reason" for withdrawal is a showing that the plea was not entered knowingly. *United States v. Saenz*, 969 F.2d 294, 296

(7th Cir.1992). A defendant has no absolute right to withdraw his guilty plea; rather, the decision to permit such a withdrawal is committed to the sound discretion of the sentencing judge. *United States v. Groll,* 992 F.2d 755, 757–58 (7th Cir.1993). Our decisions have underscored the broad discretion available to trial judges in ruling on withdrawal motions of this nature:

> When a defendant wishes to withdraw his plea after he states at a Rule 11 hearing that it was freely and knowingly given, *he faces an uphill battle* in persuading the judge that his purported reason for withdrawing his plea is "fair and just." *The presumption of verity is overcome only if the defendant satisfies a heavy burden of persuasion. The district court is generally justified in discrediting the proffered reasons for the motion to withdraw and holding the defendant to his admissions at the Rule 11 hearing.*

*Messino,* 55 F.3d at 1248 (quotations omitted).

As the foregoing discussion demonstrates, the test for whether a plea is knowing and voluntary is a flexible one, and the decision to permit withdrawal of a guilty plea is committed to the sound discretion of the sentencing court. Ordinarily, we would analyze in some detail the factors set forth in *LeDonne, supra,* to determine whether Ranum's plea was knowing and voluntary, and ask if the district court abused its considerable discretion by refusing to permit the withdrawal of the plea. The charges against Ranum were relatively straightforward, he had a high level of intelligence, education and experience, and was also represented by counsel during the plea proceedings. Additionally, the magistrate judge's colloquy with the defendant was certainly adequate to allow the judge to determine that Ranum's guilty plea was in fact voluntarily and knowingly made. Thus, all of the factors in *LeDonne* suggest that the entry of the plea was valid. 21 F.3d at 1423.

### B. *"Intent to Deceive" and False Statements Under 20 U.S.C. § 1097(a)*

We forego a detailed analysis of the validity of Ranum's plea under the *LeDonne* factors because this appeal turns on the resolution of an antecedent question of statutory interpretation, which we review *de novo. United States v. Li,* 55 F.3d 325, 330 (7th Cir.1995). As the parties concede, the central question in this case is whether 20 U.S.C. § 1097(a) includes an "intent to deceive" element in prosecutions for false statements.[9] If one starts from the premise that the crime *does* require an intent to deceive, then Ranum has arguably demonstrated a "fair and just reason" for the withdrawal of his guilty plea because he was never informed of the intent element before or at his plea hearing and thus did not enter a "knowing" plea. Conversely, if one rejects the premise, it follows that there was no abuse of discretion because the failure to be informed of a *non-existent* legal defense could not, under any circumstances, represent a fair and just reason for withdrawing the plea.

Section 1097(a) provides in relevant part: "Any person who knowingly and willfully ... obtains by ... false statement ... any funds ... provided or insured under this [title] ... shall be fined ... or imprisoned...." 20 U.S.C. § 1097(a). The trial judge affirmed the magistrate judge's denial of Ranum's motion to withdraw his guilty plea, rejecting Ranum's argument that his plea was invalid (i.e., not "knowing") because he was not made aware of the possible defense of lack of intent to deceive. According to the district court, Ranum could not have raised such a defense because intent to deceive is not an element of the crime of making a false statement under 20 U.S.C. § 1097(a). We agree.

As a preliminary matter, our review of the evidence convinces us that Ranum did, in fact, intend to defraud the U.S. Government, and receive federally-insured student loan

---

9. Intent to deceive is sometimes confused with intent to defraud. The Supreme Court has noted: "Intent to deceive and intent to defraud are not synonymous. Deceive is to cause to believe the false or mislead. Defraud is to deprive of some right, interest or property, by deceit." *United States v. Yermian,* 468 U.S. 63, 73 n. 12, 104 S.Ct. 2936, 2942 n. 12, 82 L.Ed.2d 53 (1984) (quoting *United States v. Godwin,* 566 F.2d 975, 976 (5th Cir.1978)).

funds to which he was not legally entitled, by knowingly (and repeatedly) using a false Social Security number on his loan documents. Ranum claims that he used a number allegedly assigned to him in error by MATC in order to avoid the inconvenience of having the school clarify its records. We find this argument disingenuous, and we are skeptical that anyone would have taken the chance of knowingly using a false Social Security number on these loan application documents without a good reason for doing so, e.g., concealing a record of defaulting on student loans.

The factual information offered at the plea hearing, as well as the information set forth in the Presentence Report ("PSR") (which the defendant did not challenge and thus concedes), provide strong direct as well as circumstantial evidence that Ranum acted with fraudulent intent in 1991 when he obtained student loans at MATC. The defendant admits that he knowingly used a bogus Social Security number when applying for financial aid at MATC. Ranum, college-educated with a bachelor's degree from the University of Wisconsin, certainly knew, or should have known, that the Government makes use of an individual's Social Security number for a wide range of identification purposes, including the monitoring of student loan payments. Furthermore, Ranum's history of having defaulted on earlier loan obligations and the fact that he remained in default as of 1991,[10] certainly gave him a motive to conceal his true identity through the use of a false identification number. Ranum also knew, from his unsuccessful attempt to secure financial aid at UW in 1989, that a history of default would in all probability prevent him from gaining approval for any other federally-insured loans. During his interview with the Probation Officer responsible for the preparation of his PSR, the defendant admitted that he felt "backed into a corner" financially and believed he would not be able to continue his education [at

MATC] without student aid. Ranum obviously realized that he could not obtain student loans for attending classes at MATC if he used his valid Social Security number,[11] for if he did so the Government (particularly in the age of computerized record-keeping) could easily pinpoint him as an individual who had previously failed to fulfill his loan obligations and who remained in arrears on his student loan payments.

The defendant's fraudulent intent can reasonably be inferred from the facts set forth, which demonstrate that Ranum had an opportunity to deceive the Government as well as a motive for doing so. *See, e.g., Powers v. British Vita P.L.C.,* 57 F.3d 176, 184 (2nd Cir.1995) (fraudulent intent may be inferred from "a motive for committing fraud and a clear opportunity for doing so."). If, as Ranum argues, intent to deceive is an element of § 1097(a), proof that the defendant had both a motive and an opportunity to deceive the Government provides powerful circumstantial evidence that he acted with the requisite intent. Moreover, the evidence demonstrating Ranum's intent is no less compelling because it is for the most part circumstantial. A leading treatise notes that *"circumstantial evidence is used in virtually every criminal case"* and that "there are certain kinds of cases and issues on which it is almost indispensable, because it is so unlikely that direct evidence will be available. These include such matters as the existence of a conspiracy, criminal *intent*, or other issues involving state of mind." Wright, *Federal Practice and Procedure: Criminal 2d* § 411 (emphasis added). As this court has stated, "there is nothing novel about establishing a crime through the use of circumstantial evidence, for ... circumstantial evidence is not less probative than direct evidence, and, in some cases is even more reliable." *United States v. Hatchett,* 31 F.3d 1411, 1421 (7th Cir. 1994); *see also Federal Criminal Jury In-*

---

**10.** As noted *supra,* note 4, the record does not reflect the extent of Ranum's indebtedness, nor does it indicate the number of previous loans on which Ranum had defaulted.

**11.** Whether the false Social Security number originated with MATC (as Ranum claims) or with

Ranum himself really makes little difference, just as it would make little difference in a murder prosecution whether the killer obtained the murder weapon directly from his victim or on his own.

*structions of the Seventh Circuit,* Vol. I, at 22 (1980) ("The law makes no distinction between the weight to be given either direct or circumstantial evidence."). Our decisions have emphasized, furthermore, that fact-finders are permitted "to draw upon their own experience in life as well as their common sense" in determining "what reasonably may be inferred from circumstantial evidence." *United States v. Moore,* 936 F.2d 1508, 1524 (7th Cir.1991).

Based upon the evidence—both direct and circumstantial-we believe it is a reasonable inference that Ranum did intend to defraud the Government and we therefore conclude that his asserted defense of "no intent to deceive" lacks merit. However, as discussed below, we choose to affirm the district court because intent to deceive is not a required element of the crime of making a false statement under § 1097(a). Therefore, the defense of lacking such an intent was never available to Ranum.

### C. *Reasoning By Analogy to 18 U.S.C. § 1001*

Whether Title 20 U.S.C. § 1097(a) requires proof of a specific intent to deceive is a question of first impression in this circuit. Indeed, as far as we are aware, only one other circuit has addressed this issue. In *United States v. Redfearn,* 906 F.2d 352, 354 (8th Cir.1990), the Eighth Circuit approved a jury instruction in a section 1097(a) prosecution that informed the jury that a statement is "false" if untrue when made and known to be untrue by the person making it; and that "the element of knowingly and willfully [should be weighed] by looking at whether the evidence showed the defendant knew she was filling out a student loan form falsely." The *Redfearn* court, properly in our opinion, refused to supply, by judicial interpretation, an additional element of specific intent to deceive. Unfortunately, while we believe that the opinion in *Redfearn* was correct, it provides little in the way of helpful analysis or reasoning.

The district judge in the case before us based her analysis in large measure on judicial construction of the federal "false statements" statute, 18 U.S.C. § 1001. We con-sider this a useful avenue of exploration, in light of the dearth of case law interpreting § 1097(a), and we pursue it here. Section 1001, which uses language similar to that of section 1097(a), provides: "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully ... makes any false, fictitious or fraudulent statements ... shall be fined ... or imprisoned...." 18 U.S.C. § 1001. "The purpose of this broadly worded statute is 'to protect the authorized functions of Governmental departments and agencies from the perversion which might result from ... deceptive practices.'" *United States v. Shah,* 44 F.3d 285, 289 (5th Cir.1995) (quoting *United States v. Gilliland,* 312 U.S. 86, 93, 61 S.Ct. 518, 522, 85 L.Ed. 598 (1941)).

The trial judge relied on the Supreme Court's analysis of section 1001 in *United States v. Yermian,* 468 U.S. 63, 104 S.Ct. 2936, 82 L.Ed.2d 53 (1984). In *Yermian,* the Court held that under section 1001 the Government need not prove that the defendant actually knew of the existence of federal agency jurisdiction when he made the false statement. *Id.* (the only essential "knowing and willful" act is the making of the false statement; awareness that such a statement will affect a federal entity is not required to establish the crime of making a false statement under § 1001).

The Court's holding in *Yermian* is arguably limited, and asserts only that a defendant need not be aware that he is deceiving a specific governmental agency in order to be convicted of making a false statement under section 1001. To the extent that the *Yermian* Court did address the question of intent to deceive, we acknowledge that it did so in the context of a fairly narrow question relating to awareness of federal-agency jurisdiction. Nevertheless, the Court did endorse a straightforward approach to the statutory language, noting that section 1001 *"contains no language suggesting any additional element of intent, such as a requirement that false statements be 'knowingly made in a matter within federal agency jurisdiction,' or 'with the intent to deceive the Federal*

*Government.'* " *Id.* at 69, 104 S.Ct. at 2940 (emphasis added).

■ This circuit has to date never held that section 1001 lacks the element of an intent to deceive. We have stated that § 1001 "imposes criminal penalties on one who (1) makes a statement that (2) was false, (3) was material, (4) was made knowingly and willfully, and (5) was made in a matter 'within the jurisdiction of any department or agency of the United States.' "[12] *United States v. Petullo,* 709 F.2d 1178, 1180 (7th Cir.1983). Many of our decisions do not specifically refer to an intent to deceive, in so many words, because intent is so often clear and obvious from the defendant's conduct (as in Ranum's case).[13]

Ranum argues that our holding in *United States v. Beck,* 615 F.2d 441, 453 (7th Cir. 1980), supports his contention that the statute requires an intent to deceive. We disagree. *Beck* addressed the *mens rea* requirement of § 1001 in the context of a very specific question: whether a defendant could be held liable as an aider and abettor of the crime of making a false statement, even though he had never actually seen the fraudulent documents at issue in the case. In *Beck,* we held that "[t]he [section 1001] intent requirement is satisfied when the defendant knows that misrepresentations · to and concealment from a Government agency are essential in order for a scheme to succeed." 615 F.2d at 453. *Beck* could have been charged with being criminally responsible as an aider and abettor because he participated in a plan where "it [was] *foreseeable* that false information [would] be used in statements made to a Government agency in or-

der to further the plan." *Id.* (emphasis added). This language from our decision in *Beck* is of no help to Ranum, for Ranum was neither an aider nor an abettor but acted alone, and solely for his own benefit, when he knowingly filed false documents with the Government in order that he might secure federally-insured student loans. The foreseeability of the use of false documents by others, which was a pertinent consideration in *Beck,* is irrelevant here.

Furthermore, as the Government correctly points out (and as the appellant conveniently ignores), *Beck* clearly states that *"[p]ersonal knowledge of the false information also satisfies the intent requirement."* *Id.* (citing *United States v. Glantzman,* 447 F.2d 199 (3d Cir.1971)) (emphasis added). In other words, while the fraudulent nature of a particular scheme may (if necessary) be used to infer the intent element of the statute, actual knowledge of the information's falsity would *also* suffice. Thus, if anything, *Beck contradicts* rather than supports the appellant's position, for it holds that knowledge of the falsity of the statement is sufficient, by itself, to satisfy the *mens rea* requirement of § 1001.

The Seventh Circuit model jury instructions for section 1001 comport with our analysis of Beck and with the Supreme Court's reminder in *Yermian* that section 1001 "contains no language suggesting any additional element of intent [beyond 'willful' and 'knowing']." *Yermian,* 468 U.S. at 69, 104 S.Ct. at 2940. These instructions state that "[a]n act is done willfully if done voluntarily and intentionally, and with the intent to do something

12. It is clear that Ranum's repeated use of a false Social Security number was material because it aided the defendant in achieving his desired effect of deceiving both the Department of Education and the lender concerning his loan eligibility. However, it is not necessary for an allegedly false statement to have any ill effect at all, as long as it is capable of having such an effect: "Under section 1001 a false statement may be material even though the agency did not rely on it and was not influenced by it. We have held that a false or fraudulent statement must have had only the natural tendency to influence, or have been capable of influencing, the agency." *United States v. Dick,* 744 F.2d 546, 553 (7th Cir.1984).

13. We note that a prosecution for a fraudulent, as opposed to false, statement may also be brought under section 1001, and different elements of proof might then be relevant. The present case, however, is solely about prosecution for a false statement. Thus we find unpersuasive Ranum's argument that *United States v. Kammer,* 1 F.3d 1161 (11th Cir.1993), and *United States v. Jakeway,* 783 F.Supp. 590 (M.D.Fla. 1992), support his case. Although these cases require proof of an intent to deceive under 20 U.S.C. § 1097(a), they address misapplication of property or funds, not false statements, and thus interpret an analytically different part of the statute.

the law forbids." [14] *Federal Criminal Jury Instructions of the Seventh Circuit*, Vol. III, at 56 (1986). Intent, under this language, would appear to require only a purpose to do the forbidden act, not a specific intention or awareness that the act will mislead the Government.

It is unnecessary for us to express a binding opinion as to the required elements of section 1001, for that crime is not at issue in this case. Nevertheless, we agree with the trial judge that a discussion of this statute can shed light on the similarly-worded § 1097(a), the meaning of which is disputed in the case before us. We are aware, as the dissent reminds us, that many of the circuits to address the issue have held that section 1001 requires proof of an intent to deceive. *United States v. Corsino*, 812 F.2d 26, 29 (1st Cir.1987); *United States v. Shah*, 44 F.3d 285, 289 (5th Cir.1995); *United States v. Godwin*, 566 F.2d 975, 976 (5th Cir.1978) (per curiam); *United States v. Lange*, 528 F.2d 1280, 1286 n. 10 (5th Cir.1976); *United States v. Markey*, 693 F.2d 594, 596 (6th Cir.1982); *United States v. White*, 765 F.2d 1469, 1472 (11th Cir.1985). Nevertheless, *Yermian, Beck,* and the Seventh Circuit model jury instructions quoted above strongly suggest that the knowing and willful making of a false statement are sufficient to meet the requirements of section 1001. *See also United States v. Leo*, 941 F.2d 181, 200 (3rd Cir.1991) ("In order to be convicted of making a false statement, the Government need only prove that the defendant knew that the statement he made was false; the Government does not have to prove that the defendant made the statement with the specific intent to deceive the [Government].").

Because the wording of § 1001 and § 1097(a) are so similar, we find the learned trial judge's reasoning by analogy compelling and persuasive. The logic of the foregoing reasoning is buttressed by a plain reading of the statutory language, which further supports the trial judge's conclusion that intent to deceive is not an element of the crime of making a false statement under section 1097(a).

### D. *Plain Meaning of § 1097(a)*

▮ "A court's starting point to determine the intent of Congress is the language of the statute itself." *United States v. Hayward*, 6 F.3d 1241, 1245 (7th Cir.1993) (citation omitted). If that language is "clear and unambiguous ... the court must give effect to the plain meaning of the statute." *Id.* (citations omitted). As the Supreme Court recently reminded us (in reference to the judicial construction of section 1001): "In the ordinary case, absent any 'indication that doing so would frustrate Congress's clear intention or yield patent absurdity, our obligation is to apply the statute as Congress wrote it.'" *Hubbard v. United States*, —— U.S. ——, ——, 115 S.Ct. 1754, 1759, 131 L.Ed.2d 779 (1995) (quoting *BFP v. Resolution Trust Corp.*, 511 U.S. 531, ——, 114 S.Ct. 1757, 1778, 128 L.Ed.2d 556 (1994) (Souter, J., dissenting)).

Ranum notes that whereas 18 U.S.C. § 1001 punishes one who "knowingly and willfully ... makes any false ... statements," 20 U.S.C. § 1097(a) applies to one who "knowingly and willfully ... obtains by ... false statement ... any [federally-insured student loan] funds...." Ranum argues (and the dissent agrees) that "willfully" in section 1097(a) modifies "obtains by" and that consequently, only a loan applicant who specifically intends for his false statement to influence the granting of the loan may be held criminally liable under the statute. In order for the statute to have this meaning, one must take the additional, creative step of linking the word "willfully" and the words "obtains by" in order to generate a specific intent element that is not explicitly set forth in the statute. Such a reading, in our opinion, takes us beyond the plain meaning of the statute.[15]

14. The meaning of "willfully" varies somewhat with the context of the statute. *See, e.g., United States v. Bishop*, 412 U.S. 346, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973) (discussing "willfully" in context of tax statute).

15. As discussed earlier in this opinion, even if we were to assume that intent to deceive *is* an element of the crime (as Ranum argues), intent can be inferred easily from the facts of Ranum's case.

■ Ranum maintains that the language of the statute is ambiguous and ought to be construed in his favor under the "rule of lenity." Although ambiguity concerning the meaning of statutory language "should be resolved in favor of lenity," the rule of lenity "is inapplicable unless there is a grievous ambiguity or uncertainty in the language and structure of the Act." *United States v. Neal*, 46 F.3d 1405, 1410 (7th Cir.1995) (quotations omitted) (emphasis added). We do not believe that the language of § 1097(a) meets this difficult standard, nor do we believe that ambiguity may be found (and the rule of lenity invoked) whenever a creative appellant is able to posit possible alternative meanings for statutory language, no matter how tenuous or improbable. Under Ranum's nuanced interpretation (with which the dissent agrees), specific intent would be required twice, with regard to both the making of the statement and the obtaining of the loan. We do not agree that this is a plausible reading of the statute.

■ We also reject the defendant's argument (endorsed by the dissent) because it would render some of the statutory language in § 1097 superfluous, and it is well-established that "courts should disfavor interpretations of statutes that render language superfluous." *Ct. Nat'l Bank v. Germain*, 503 U.S. 249, 253, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992). If it is an implicit requirement of the statute that "[t]he defendant ... make a false statement *for the purpose of misleading the reviewer of the loan*" (as the dissent maintains), then other parts of the statute become redundant and unnecessary. Specifically, we note that section 1097(a) makes it unlawful to obtain a student loan by *fraud* as well as false statement. A traditional element of fraud is the requirement that the defendant intend for someone to rely upon a particular misrepresentation. *See, e.g., L.S. Heath & Son, Inc. v. AT & T Information Systems*, 9 F.3d 561, 572 (7th Cir.1993) (untrue statement must

have been made "for the purpose of inducing reliance").[16] Ranum's argument begs the question: "In drafting § 1097(a), why did Congress include fraud (with its more exacting intent requirement) *in addition* to false statements if it meant the false statements language to operate essentially as a fraud statute?"[17] Holding that the false statements portion of § 1097 has an "intent to deceive" requirement of the kind urged by Ranum would render the fraud language in the statute superfluous, which we refuse to do.

In our opinion, Ranum's analysis of the statute ignores its straightforward and unambiguous purpose, which is to require that applicants provide the Government with truthful statements on federally-guaranteed student loan applications. Section 1097(a) does not impose strict liability on those who make false statements in connection with student loan applications. Rather, it requires that the making of such statements be knowing and willful (i.e., not the result of mistake or oversight). There is nowhere even a hint that Congress intended a more stringent intent requirement; therefore, we refuse to supply one by judicial construction.

## IV. CONCLUSION

We have no doubt that Ranum did intend to deceive the Government and believe that his asserted defense of "no intent to deceive" clearly lacks merit. In fact, we are puzzled that the defendant should ask us to set aside the generous plea agreement he negotiated with the Government in order to pursue such a dubious defense at trial. Does Ranum truly wish to gamble away a misdemeanor conviction and a comparatively light sentence on the slim chance that he can avoid conviction on more serious felony charges by arguing that he lacked an intent to deceive the Government? It is tempting to allow Ranum to take this gamble, if only to demonstrate the folly of his highrisk legal strategy. We

---

16. As discussed previously, we are convinced that the defendant clearly intended that the Government rely upon the false Social Security number in order that he might be found eligible for and receive federally-insured student loan funds to which he was not entitled. Thus, in our

opinion, Ranum obtained the funds by fraud as well as by "false statement."

17. The dissent notes correctly that the legislative history of the statute does little to shed light on the meaning of § 1097.

are bound by the law, however, and our analysis persuades us that the district court correctly denied Ranum's motion to withdraw because intent is not an element of the crime of making a false statement under Title 20 U.S.C. § 1097. Ranum knowingly made a false statement in the process of obtaining a loan. Additionally, he admitted at his plea hearing and conceded on appeal that he did so willfully, for Ranum knew that the act was wrongful and did it anyway in order that he might receive student loans. As the Government observes in its brief, Ranum "did not obtain funds by accident." Under a plain reading of the statute, the knowing and willful making of a false statement are sufficient to establish the crime to which Ranum pleaded guilty. Because the asserted defense of "no intent to deceive" was never available to Ranum *as a matter of law*, he has failed to demonstrate a "fair and just reason" for the withdrawal of his guilty plea and we hold that the district court did not abuse its discretion in denying the motion to withdraw.

AFFIRMED.

ESCHBACH, Circuit Judge, dissenting.

The majority acknowledges that the single issue we must decide is whether 20 U.S.C. § 1097(a) requires that the Government prove that the defendant had "intent to deceive the Government." The majority also acknowledges that it is irrelevant whether the majority believes Ranum's asserted defense that he did not intend to deceive the Government. Yet the majority spends a preponderance of its opinion explaining that "[b]ased upon the evidence-both direct and circumstantial—we believe it is a reasonable inference that Ranum *did* intend to defraud the Government...."[1] Thou doth protest too much. The fact that the majority, who has never met Ranum, does not believe Ranum lends no support to the majority's holding today. The Constitution requires the Government to prove each element of an offense to the trier of fact, not to the Seventh Circuit Court of Appeals.

Ranum contends now, as he contended at his plea hearing, that he used an incorrect social security number on a loan application because the educational institution to which he applied knew him by a different number. Ranum contends that he used the incorrect number with the intent to avoid administrative inconvenience, not because he had intent to deceive the Government or anyone else. Ranum attempted to explain to the magistrate judge his reason for using an incorrect social security number, but the magistrate denied him an opportunity to do so.[2] If "intent to deceive" is an element of the offense, then we must reverse the district court's denial of Ranum's motion to withdraw his guilty plea. Because § 1097(a) requires that the Government prove that the defendant had "intent to deceive," I respectfully dissent from the majority opinion affirming the judgment of the district court.

Three reasons compel my conclusion. First, the plain language of the statute requires such proof. Second, four of our sister circuits have found that a similarly worded statute requires such proof. Third, the mens rea element of the statute is at most ambiguous and the legislative history provides no

---

1. The majority uses the term "evidence" loosely. The "evidence" the majority relies on is a Pre-sentencing Report. Hardly the type of "evidence" normally thought of as sufficient to support a conviction.

2. As part of its attempt to emphasize that the majority does not believe Ranum, the majority neglects to discuss the facts as they happened at the plea hearing. The transcript of the plea hearing reveals that Ranum attempted to explain to the court why he used an incorrect social security number on the student loan application:

    MR. RANUM: What occurred there is that I had taken a computer course many years before from this school at a downtown campus, the technical school. And when I started and went there, the application process with MATC, they had a different number. I was reluctant to change that number. I eventually did not. I should have changed the number back to my correct I.D. number

    ....

    I think the fact that I did do something wrong is clear and that I didn't correct it, but I would like the Court to look into the reasons why those actions were taken.

    THE COURT: And I'm going to.

Unfortunately, the court did not hold up its end of the bargain. In the magistrate judge's order denying Ranum's motion to withdraw his guilty plea, the court acknowledges that it did not explore this point with Ranum.

insight into the express or implied intent of Congress. Any ambiguity in the criminal statute, therefore, must be resolved in defendant's favor.

This court must begin its inquiry with the language of the statute itself. *Bailey v. United States,* —— U.S. ——, ——, 116 S.Ct. 501, 506, 133 L.Ed.2d 472 (1995).[3] By its own language, § 1097(a) applies to "[a]ny person who *knowingly and willfully* embezzles, misapplies, steals, *obtains by* fraud, *false statement* or forgery ... any funds...." 20 U.S.C. § 1097(a) (emphasis added). Tracking the language of the statute, Ranum argues that "willfully" modifies the phrase "obtains by." The statutory text has a causal element and the term "willfully" modifies this causal element. Thus, it is not enough for the Government to prove that Ranum willfully *made* a false statement. The Government must also prove that the defendant made the false statement for the purpose of misleading the Government. As the majority notes, "specific intent would be required twice, with regard to both the making of the statement and the obtaining of the loan." *Ante* at 1030.

Ranum's interpretation of the statute is consonant with the plain language of the statute. The Government's position before the district court evidences the "plainness" of Ranum's reading of the statute. At the hearing before the district court, the Government conceded that "intent to deceive" is an element of the offense, but argued that Ranum's guilty plea had been knowing and voluntary. The district court, nevertheless, rejected both Ranum's and the Government's reading of the statute. The majority gives lip service to the "plain" reading of the statute but posits that the statute reaches anyone "who makes false statements in connection with student loan applications." *Ante* at 1030.

I would agree with the majority if the statute said "any person who knowingly and willfully ... makes a false statement...." But it does not.[4] The statute says "[a]ny person who knowingly and willfully ... obtains by ... false statement." 20 U.S.C. § 1097(a). Again, this language has a causal element that the majority ignores. The defendant must make a false statement for the purpose of misleading the reviewer of the loan. The grammatical structure of the statute also mandates such a reading because the phrase "willfully" modifies the phrase "obtains by." *See United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). Therefore, "intent to deceive" is an element of the offense.

The majority cites to the Seventh Circuit model jury instructions for a similarly worded statute, 18 U.S.C. § 1001, which state that "[a]n act is done willfully if done voluntarily and intentionally, and with the intent to do something the law forbids." *Federal Criminal Jury Instructions of the Seventh Circuit,* Vol. III, at 56 (1986). This begs the question of "what is it that § 1097(a) forbids?" Section 1097(a) forbids "obtaining by" false statement. Therefore, the model jury instructions for 20 U.S.C. § 1097(a) would provide that an act is done willfully if done voluntarily and intentionally, and with the intent to deceive. *See Federal Judicial Center, Pattern Jury Instructions* 102 (1987) (stating that, pursuant to 18 U.S.C. § 1001, the Government must prove beyond a reasonable doubt: that defendant made a false statement to a federal entity; that he knew the statement was false; and "that he made the false statement ... for the purpose of misleading the [federal entity].").

The majority's discussion of 18 U.S.C. § 1001 notes that the First, Fifth, Sixth and Eleventh Circuits have explicitly held that "intent to deceive" is required to convict a

---

3. The majority reaches the language of the statute only after stating that it disbelieves Ranum's assertion that he did not intend to deceive the government and after conducting an analysis of a similarly worded statute (a statute that four of our sister circuits have interpreted in a manner that supports Ranum's position).

4. The majority's strained reading of the statute's language would allow a conviction for willfully and knowingly making a false statement in the process of obtaining funds. The language of the statute requires more. The defendant must "obtain" funds before the crime is complete. *United States v. Redfearn,* 906 F.2d 352, 353–54 (8th Cir.1990). The majority's "plain" reading of the statute ignores the language of the statute.

defendant under § 1001 for making a false statement. *Ante* at 1029. Section 1001 is a similarly worded statute. The wording is, however, not exactly the same as the wording of 20 U.S.C. § 1097(a). Section 1001 states in relevant part: "Whoever, in any matter within the jurisdiction of any department or agency of the United States *knowingly and willfully* ... makes any *false* ... *statements* ... shall be fined." 18 U.S.C. § 1001. The statute at issue in this case states "[a]ny person who knowingly and willfully ... obtains by ... false statement." 20 U.S.C. § 1097(a). A comparison of the two statutes leads to the conclusion that 20 U.S.C. § 1097(a) more clearly requires proof of "intent to deceive." Yet, the only courts to have addressed the issue have held that "intent to deceive" is an element of 18 U.S.C. § 1001. *See, e.g., United States v. Shah,* 44 F.3d 285, 289 (5th Cir.1995) (stating that intent to deceive or mislead is an element of the offense and noting that the district court properly instructed the jury that the Government must prove "that the defendant made the false statement for the purposes of misleading the General Services Administration"). If "intent to deceive" is an element of 18 U.S.C. § 1001, then the statutory text dictates that "intent to deceive" is an element of 20 U.S.C. § 1097(a).

As the preceding discussion of the statutory text makes clear, "intent to deceive" is an element of 20 U.S.C. § 1097(a). The legislative history of this statute is sparse and contains no indication of a contrary purpose. See H.R. Conf. Rep. No. 630, 102d Cong., 2d Sess. 413, 513 (1992), *reprinted* in 1992 U.S.C.C.A.N. 334, 528, 628. Even if we were to find that the text is ambiguous, however, we resolve any doubt in favor of the defendant. *Hughey v. United States,* 495 U.S. 411, 422, 110 S.Ct. 1979, 1985, 109 L.Ed.2d 408 (1990) (lenity principles "demand resolution of ambiguities in criminal statutes in favor of the defendant"); *see also Liparota v. United States,* 471 U.S. 419, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985) ("Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability."). It would be disingenuous of the Government to contend that the statute is not ambiguous at the very least, given that the Government conceded at the hearing before the district court that one element of the statute was an "intent to deceive."

Indeed, application of the rule of lenity is particularly appropriate in this case because Ranum argues that he pleaded guilty to an offense that does not exist. He tried to explain to the magistrate judge his reason for making a false statement, but the magistrate judge denied him the opportunity to do so. All Ranum seeks is a chance to withdraw his plea of guilty to a misdemeanor charge. He may then face a trial on more serious felony charges, but he will do so with "fair warning concerning conduct rendered illegal." *Id.*

For the foregoing reasons, it is clear that 20 U.S.C. § 1097(a) requires the Government to prove that the defendant had the "intent to deceive the Government." I respectfully dissent.