151 F.3d 1034
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Timothy CUNNINGHAM, Defendant-Appellant.
 No. 97-4049.
 United States Court of Appeals, Seventh Circuit.
 Argued June 9, 1998.
Decided June 25, 1998.
 
 Appeal from the United States District Court for the Eastern District of Wisconsin. No. 93-CR-39.
 Before Hon. RICHARD A. POSNER, Chief Judge, Hon. RICHARD D. CUDAHY, Hon. JESSE E. ESCHBACH, Circuit Judges.
 ORDER
 RANDA, Judge.
 
 
 1
 The district court revoked Timothy Cunningham's supervised release because he violated the conditions of his release. The court found that Cunningham committed numerous grade C and one grade B violations. Under the Sentencing Guidelines' policy statement, a grade B violation calls for a suggested imprisonment range of 18-24 months. The district court sentenced him at the bottom of this range to 18 months imprisonment. Cunningham appeals, arguing that the government failed to prove by a preponderance of the evidence that he committed the grade B violation, thereby entitling him to resentencing. We affirm.
 
 I. FACTS
 
 2
 In 1993, Cunningham pleaded guilty to one count, from a three count indictment, of aiding and abetting the possession of goods that had been embezzled and stolen from an interstate shipment, in violation of 18 U.S.C. §§ 659, 2. He was sentenced to 18 months' imprisonment joint and several liability for $20,997 in restitution, and three years of supervised release. Cunningham began his term of supervised release on February 2, 1995. On August 13, 1997, the United States Probation Office filed a petition requesting that a summons be issued for Cunningham to show cause why his supervised release should not be revoked. The petition alleged five categories of violations of his supervised release, namely that Cunningham; (1) missed approximately two dozen random urinalysis tests; (2) failed to make consistent restitution payments; (3) failed to submit accurate child support information; (4) failed to submit truthful and complete financial statements to his probation officer in his monthly reports; and (5) committed numerous municipal and traffic violations, including threatening a police officer. All of the alleged violations are grade C with the exception of the violation relating to untruthful financial statements, which is a grade B violation. U.S.S.G. § 7B1.1(a), p.s. Because Cunningham had a criminal history category of V at his original sentencing, the guidelines suggest a sentencing range of 7-13 months for the grade C violations, and 18-24 months for the grade B violation. U.S.S.G. § 7B1.4(a), p.s. The district court granted the probation office's petition and held a revocation hearing, at which several witnesses testified.
 
 
 3
 At the revocation hearing, the evidence showed that one of the conditions of Cunningham's supervised release required him to submit truthful monthly reports to his probation officer. These reports mandated that Cunningham report his total monthly income in each report. Each report carried the warning that a false statement on the report would constitute a violation of 18 U.S.C. § 1001 and could result in a revocation of supervised release, imprisonment of five years, and a $250,000 fine. Cunningham received full instructions on how to complete the monthly reports.
 
 
 4
 Although the monthly reports are not part of the record, the testimony at the revocation hearing established the following facts. In his April 1997 monthly report, Cunningham disclosed that the only income he received was $250 from working at Joe Parker Auto. He also submitted pay stubs from this employment that showed that $250 was only one week's salary and that he earned more money in April. In his May and June 1997 monthly reports, Cunningham did not list any income. However, on May 1, 1997, during one of Cunningham's numerous traffic stops, he had $1,000 in cash in his possession. At another traffic stop, on May 28, 1997, Cunningham had $900 in cash. The government argued that the financial statements in his monthly reports failed to explain his possession of $1,900 during the month of May, and that he therefore provided untruthful statements resulting in a grade B violation.
 
 
 5
 Cunningham admitted to the grade C violations, but argued that he did not commit the grade B violation. He argued that he did not intentionally provide untruthful statements because he was confused about filling out the monthly reports, and some of the money was not actual income, but was given to him by his girlfriend in order to pay her rent. Although Cunningham did not testify at the revocation hearing, prior to the hearing he explained to his probation officer where he had obtained the money he possessed when he was arrested. He stated that with respect to the $1,000 from May 1, he had received $500 from his girlfriend to be used to pay rent and the other $500 from working at Joe Parker Auto Service. As for the $900 from May 28, he explained that he had received the money from selling videos. The probation officer testified that if Cunningham received money from his girlfriend to pay her rent or bills, rather than for him to use personally, it would not be considered income that needed to be declared in the monthly reports.
 
 
 6
 At the revocation hearing, Cunningham argued that rather than revoke his supervised release, the district court could extend his supervised release or order that he serve the remaining three months of his supervised release on home detention. The government argued that even though there was some mitigation relating to the grade B violation, a sentence in the suggested range for the grade C violations would understate the seriousness of his offenses because he had committed more than 30 grade C violations. Accordingly, the government suggested that the court impose a term of imprisonment of 18 months, the low end of the grade B range. The government believed that a sentence of 18 months would be appropriate even if the court found that Cunningham did not commit the grade B violation. The district court found that Cunningham had committed all of the violations, and although it agreed that there were mitigating circumstances with respect to the grade B violation due to Cunningham's submission of his pay stubs, it found that Cunningham had nonetheless failed to submit truthful financial information in his reports. The court found that with a grade B violation and a criminal history category of V at his original sentencing, the Sentencing Guidelines called for a non-binding, suggested imprisonment range of 18 to 24 months. U.S.S.G. § 7B1.4(a), p.s. The district court sentenced Cunningham at the low end of this range to 18 months' imprisonment and ordered continued restitution of the remaining $10,847.75.
 
 II. DISCUSSION
 
 7
 On appeal, Cunningham does not dispute any of the grade C violations, instead he argues that the government failed to prove by a preponderance of the evidence that he committed the grade B violation, thereby requiring him to be resentenced for committing only the grade C violations. Under 18 U.S.C. § 3583(e), a defendant's term of supervised release may be revoked if the defendant violates the conditions of his release. The defendant may be required to serve in prison all or part of his term of supervised release, provided that it does not exceed the statutory maximum provided in 18 U.S.C. § 3583(e)(3). McClanahan, 136 F.3d at 1152. Cunningham's original sentence is a Class C felony, and therefore the statutory maximum sentence that he can receive is two years. 18 U.S.C. §§ 3559(a)(3), 3583(e)(3).
 
 
 8
 Section 7B1.4 is a policy statement, rather than a sentencing guideline, that sets forth a suggested range of imprisonment for violation of the terms of supervised release. The suggested range is determined from a chart based on the grade of the violation and the criminal history category of the defendant at the time that he was originally sentenced. U.S.S.G. § 7B1.4, p.s.
 
 
 9
 Cunningham argues that he must be resentenced because the facts did not establish by a preponderance of the evidence that he submitted untruthful financial information in his monthly reports. More specifically, Cunningham argues that he did not act knowingly or willfully in providing false information and the money that he failed to include in his monthly reports was not actually income. By statute, the district court must find by a preponderance of the evidence that a defendant violated a condition of his supervised release in order to revoke the release and sentence him for the violation. 18 U.S.C. § 3583(e)(3); United States v. Goad, 44 F.3d 580, 585 (7th Cir.1995).
 
 
 10
 Cunningham is challenging the district court's factual determination that he knowingly submitted untruthful reports; accordingly, the proper standard of review is for clear error. 18 U.S.C. § 3742(e) ("The court of appeals ... shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.); see United States v. Wyatt, 102 F.3d 241, 246 (7th Cir.1996), cert. denied, 520 U.S. 1149, 117 S.Ct. 1325, 137 L.Ed.2d 486 (1997). " 'A factual determination is clearly erroneous only if, after considering all of the evidence, the reviewing court is left with the definite and firm conviction that a mistake has been committed." ' Id. (quoting United States v. Messino, 55 F.3d 1241, 1247 (7th Cir.1995) (internal quotations omitted)). Furthermore, where there are two permissible views of the evidence, a district court's choice between them is not clearly erroneous. United States v. Bush, 79 F.3d 64, 66 (7th Cir.1996).
 
 
 11
 Cunningham's argument focuses heavily on his assertion that in order to have violated his supervised release condition, he must have submitted incomplete information knowingly and willfully or intentionally. Although Cunningham is correct in stating that there is a mens rea requirement, he fails to provide any citations or support for this requirement. The relevant condition of supervision does not include any such mens rea requirement and merely states, "the defendant shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month." The mens rea requirement stems, not from the conditions of supervised release, but from the statute that sets Cunningham's untruthful reports as a grade B violation. Under 18 U.S .C. § 1001(a), an individual who "knowingly and willfully ... makes any materially false, fictitious, or fraudulent statement or representation ... shall be fined under this title or imprisoned not more than 5 years, or both." A violation of this statute is a grade B violation because it is punishable by a term of imprisonment exceeding one year, as opposed to the mere violation of a condition of supervised release, which is only a grade C violation. U.S.S.G. § 7B1.1(a), p.s.
 
 
 12
 This court has stated that § 1001 " 'imposes criminal penalties on one who (1) makes a statement that (2) was false, (3) was material, (4) was made knowingly and willfully, and (5) was made in a matter within the jurisdiction of any department or agency of the United States." ' United States v. Ranum, 96 F.3d 1020, 1028 (7th Cir.1996), cert. denied, 519 U.S. 1094, 117 S.Ct. 773, 136 L.Ed.2d 718 (1997) (quoting United States v. Petullo, 709 F.2d 1178, 1180 (7th Cir.1983) (internal quotation and footnote omitted)); see United States v. Ross, 77 F.3d 1525, 1543-44 (7th Cir.1996). Personal knowledge of the false information satisfies the mens rea requirement. Ranum, 96 F.3d at 1028.
 
 
 13
 Cunningham argues that because he submitted his pay stubs from Joe Parker Auto Service along with his monthly reports, he lacked any intent or willfulness to provide incomplete or untruthful information. Even when Cunningham only reported one week's pay for his monthly income in his April report, he argues that it was an honest mistake in light of his submission of pay stubs for the entire month. However, where the monthly report required Cunningham to report his monthly income and he failed to disclose any of the money that he earned from selling video tapes, he has knowingly and willfully made a false statement. As the district court pointed out, there is some mitigation to Cunningham's failure to report his monthly income from Joe Parker Auto Service because he apparently submitted his pay stubs for the entire month of May. However, even if this court sets aside the unreported money from the auto service job, Cunningham completely failed to include in his monthly reports any of the income he obtained from selling video tapes or any pay stubs that reflected such income. Prior to the revocation hearing, Cunningham, when confronted by his probation officer about the May 28 arrest, stated that the $900 "was revenue from selling videos." Therefore, as Cunningham admitted that he was aware that the $900 was "revenue," he knowingly and willfully submitted false monthly reports when he failed to disclose this money as income.
 
 
 14
 Cunningham attempts to argue that the money received from selling video tapes was not income. In a disingenuous argument, Cunningham asserts that it is "plausible that the money was not income, but rather revenue," and that Cunningham may not have believed this "revenue" to be income. Although Cunningham correctly points out that all of the $900 may not have been net income, at least some of it was unmistakably income, regardless of whether he refers to it as income, revenue, remuneration, compensation, or earnings. Cunningham knew that he was making money from selling video tapes, yet he failed to include this money in his monthly reports.
 
 
 15
 As a last ditch effort, Cunningham attempts to turn the tables and put the blame for the incomplete financial information on his probation officer. Cunningham appears to argue that it was the probation officer's fault that the financial information was not accurate because the officer reviewed the monthly reports for accuracy, was aware of Cunningham's sale of video tapes, and made a correction on one of the reports relating to Cunningham being questioned by officers. This argument is wholly without merit because Cunningham, not his probation officer, bears the burden of ensuring that he supplied truthful and complete information; if Cunningham was unsure of whether he was required to report certain sums of money he should have asked his probation officer. It defies common sense to state that a false statement in a monthly report is not a violation because the probation officer failed to catch it.
 
 III. CONCLUSION
 
 16
 The district court did not clearly err in finding that Cunningham knowingly and willfully failed to state on his monthly reports that he received income from selling video tapes.
 
 
 17
 AFFIRMED.